George F. X. McInerkey, J.
Petition for judgment pursuant to section 179-q of the Village Law is granted setting aside and voiding the determination of the Planning Board of the Village of Northport in approving the subdivision entitled “ Fairwind at Northport ”.
Application was made to the Planning Board for the proposed subdivision on or about September 29, 1971. The premises are now and were on September 29,1971, being used for a hotel as a nonconforming use in an E residential zone located on North-port Harbor. The area involved is 4.558 acres, of which 1.203 acres are harbor bottom land. On December 8, 1971 the board unanimously approved the application which provides for cluster zoning, the elimination of side yard requirements, attached dwellings and provides for 22 plots.
This is an article 78 proceeding brought by 18 petitioners who are residents and property owners in the vicinity of the proposed development. They attack the Planning Board’s approval on the grounds that the board’s action is illegal, ultra vires, unreasonable, capricious, arbitrary, and in excess of its authority.
The respondents contend that the board is authorized to modify the zoning requirements to allow construction of this subdivision under section 179-p of the Village Law and section 52-9 of the Code of the Village of Northport, and that the petitioners have no “ standing ” as aggrieved persons so as to enable them to maintain this proceeding.
The State Legislature in an effort to enable municipalities to avoid the banal and stereotyped clones resulting from the Procrustean application of traditional zoning ordinances authorized the local Legislature to empower the local Planning Boards to vary certain statutory standards of the zoning ordinances by section 179-p of the Village Law and section 281 of the Town Law.
This goal occasioned some legal difficulties. If the Planning Board were given unlimited discretion to vary the statutory *281 requirements, it would be a usurpation of the functions of the Board of Appeals and of the Village Board. If the applications were to be processed by the Boards of Appeals, the boards would be acting as Planning Boards, a function for which they were not designed. (Van Deusen v. Jackson, 35 A D 2d 58, affd. 28 N Y 2d 608.)
In addition, since the variances sought for a subdivision were not within the normal categories of use or hardship appeals, the delegation of powers to the Planning Boards had to be carefully delimited to avoid an illegal assignment of power. (Matter of Hiscox v. Levine, 31 Misc 2d 151.)
The statute (Village Law, § 179-p) authorizing the approval of cluster zoning for villages reads in pertinent part: “ The board of trustees is hereby empowered by resolution to authorize the planning board, simultaneously with the approval of a plat or plats pursuant to this article, to modify applicable provisions of the zoning ordinances, subject to the conditions hereinafter set forth and such other reasonable conditions as the board of trustees may in its discretion add thereto. Such authorisation shall specify the lands to which this procedure may be applicable * * * The conditions hereinabove referred to are as follows: * * * (b) This procedure shall be applicable only to lands zoned for residential purposes * * * ” (emphasis supplied).
Two sentences are critical. The first is “ Such authorization shall specify the lands to which this procedure may be applicable The second is “ This procedure shall be applicable only to lands zoned for residential purposes ”.
To give the first sentence meaning in the face of the general limitation in the second, one must conclude that a specific resolution of the trustees is contemplated for each subdivision presumably giving directions and limitations to the Planning Board for that specific project. It will not suffice to say that the second sentence automatically fulfills this requirement, for then the first sentence is entirely unnecessary.
The court holds that the second sentence is a limitation on the zoning classification of land properly to be considered by the Planning Board, and that the first sentence requires a direction to the board as to which part of this classification may be considered by it. Thus, the resolution discussed in Orrell v. Planning Bd. of Town of Pound Ridge (66 Misc 2d 843) explicitly describes the lands to be processed and very carefully limits the powers of the board adding to the limitations already contained in the enabling statute (Town Law, § 281).
*282 “ Section 179-p of the Village Law * * * does not provide as he asserts, that a building plan indicating lots where houses are proposed to be built (submitted with a plat showing such lots), if approved by the Planning Board, shall modify or supplement the zoning regulations of the land shown on the plat. Such approval results in a modification of the zoning regulations, only if the Board of Trustees has empowered the Planning Board to modify them by general or special rule, and only to the extent and within the limitations prescribed by such rule.” (Matter of Johnson v. Moore, 13 A D 2d 984, 985.)
The only purported resolution of the trustees empowering the Planning Board to process applications is section 52-9 of the Northport Village Code. The respondents must of necessity argue that this is sufficient to activate the powers of section 179-p of the Village Law.
The court finds no controlling difference between a resolution and an ordinance other than that the ordinance is a more formal resolution. (Matter of Amatulli v. Sweeney, 33 Misc 2d 324 ; 5 McQuillin, Municipal Corporations [3d ed.], § 15.08, “ Resolution ”.)
The section states:
“ § 52.9, Planning Board to Conform Zoning Regulations. (Amended 11-6-63)
“ The Planning Board is authorized and empowered simultaneously with the approval of any such plat mentioned in § 52.8 to confirm the zoning regulations of the land as platted as shown on the Official Zoning Map of the village or to make any reasonable changes therein as may be necessary or proper to improve or protect the interests of the village in its public health, safety and general welfare, provided that no such change shall result in a greater average density of population or cover of the land with buildings than is permitted in the district wherein such land lies, as shown on the Official Zoning Map, and provided further that no power is hereby granted said Board to change the requirements of the Zoning Ordinance affecting such property.”
Unfortunately the resolution is meaningless in a legal sense. The board is given two options; one is that it can confirm the zoning regulations as shown on the official zoning map. This is no grant of power since normally it could only do this, unless the power to vary had been given to it. The second option is relevant here. It provides that the board may, with respect to the zoning regulations, “ make any reasonable changes therein as may be necessary * * * and provided further *283 that no power is hereby granted said Board to change the requirements of the zoning ordinance affecting such property.”
Read literally, this allows the board to make any changes as long as no change is made, unless one assumes that there is a difference between zoning regulations and the zoning ordinance.
A more basic objection is that the attempted grant of power is too broad and constitutes an illegal delegation of legislative authority.
This same general grant of power would be illegal in the enabling statutes themselves (Town Law, § 281; Village Law, § 179-p) were it not for the detailed limitations and guide lines added to the general grant. (Matter of Hiscox v. Levine, 31 Misc 2d 151, supra; Orrell v. Planning Bd. of Town of Pound Ridge, 66 Misc 2d 843, supra.)
Indeed such a grant as in section 52-9 would exceed the power given to a Board of Zoning Appeals, which is circumscribed in its power by the use and hardship limitations. Neither the Board of Appeals nor the Planning Board can exercise legislative power. (Van Deusen v. Jackson, 35 A D 2d 58, affd. 28 N Y 2d 608.) Restated, the import of section 52-9 would give more power to the Planning Board than was given to the trustees by section 179-p. Another objection is that the map as approved by the Planning Board would approve attached dwellings, although this is not permitted under the zoning ordinances. Such permission could have been given by the board of trustees in its resolution if it had so desired, pursuant to the specific authorization contained in section 179-p of the Village Law, but it did not.
There is a hiatus between the powers open to the trustees to confer upon the Planning Board and the exercise of those powers by the Planning Board in the present absence of a proper resolution.
As to “ standing ” of the petitioners, all 18 live in close proximity to the premises in question and make the allegation that the subdivision as submitted would result in depreciation of their properties and traffic congestion which gives them the right to question the action of the board. (Matter of Mueller v. Anderson, 60 Misc 2d 568; Balsam v. Jagger, 231 N. Y. S. 2d 450.)
In view of the above there is no necessity to go into the merits of the other issues that have been raised.