Leon D. Lazer J.
The Village of Northport and its building inspector have refused to issue certificates of occupancy for the residential use of four single-family dwellings (the "houses”) and in this action seek to enjoin the use. The defendants, consisting of the owner ("Guardian”), which alleges that it invested the sum of $254,900 in the houses, and the residential occupants, have counterclaimed for judgment declaring that they are subject to no legal requirement to obtain certificates of occupancy or, in the alternative, for judgment in the nature of mandamus directing the issuance of the certificates. At current issue are the plaintiffs’ motion for a preliminary injunction and the defendants’ cross motion for summary judgment.
The houses are the original model homes of the Rustic Acres subdivision, a highly ambitious waterfront development abandoned in disarray in 1974 upon the financial collapse of its sponsor. As approved by the Northport planning board in 1970, the Rustic Acres plats included a lagoon, promenades, park areas, a sanitary sewer system, and the customary provisions for roads and drainage structures. In consideration of the open space and other amenities to be provided by the developer, the board exercised incentive zoning powers provided by section 7-738 of the Village Law in connection with plat approval and significantly reduced the one-acre zoning requirements applicable to all of the 86 lots involved. Prior to the bonding and filing of the approved plats, building permits for the model houses were issued in October, 1970 under the provisions of a subdivision regulation which authorized such permits, in anticipation of future plat approval, subject to *346 certain safeguards based upon the withholding of certificates of occupancy. The developer posted bonds in the amounts of $98,875 and $143,240 to guarantee installation of all requisite improvements and the plats were filed with the county clerk. Construction of the model houses was completed in 1971, but Guardian did not acquire title to them until 1974 when it foreclosed building loan mortgages held by it. The individual defendants are the lessees of Guardian.
The genesis of this litigation is the abandonment of the Rustic Acres project by its developer without the installation of the platted improvements. The plaintiffs’ contention is that the houses may not be occupied in the absence of certificates of occupancy and that Guardian may not obtain such certificates because (1) the sewer system and other platted offsite improvements have not been installed, and (2) the plats themselves were illegally approved. Since both the village and the Suffolk County Health Department approved the use of individual septic tanks pending installation of sewers, it is the effect of the absence of the other improvements which is in issue. Notwithstanding the missing improvements, the defendants argue that the houses are not subject to any legal requirement for certificates of occupancy because chapter 13 of the Northport Code, the January 1, 1975 ordinance which contains the legal mandate for such certificates, has a savings clause (§ 13-16) which provides that "[njothing in this code shall require the removal, alteration or abandonment of, nor prevent the continuation of the use and occupancy of, a lawfully existing building, except as may be necessary for the safety of life and property.”
According to the defendants, the savings clause renders any building which achieved legal nonconforming use status prior to January 1, 1975 immune to the demands of the ordinance. The clause, however, merely constitutes a restatement of the venerable postulate that the maintenance of a vested legal nonconforming use is constitutionally safeguarded (Town of Somers v Camarco, 308 NY 537) but it does not serve to vitiate settled law that the existence of a legal nonconforming use does not transcend the obligation to obtain a certificate of occupancy for it (People v Kesbec, Inc., 281 NY 785; People v Wolfe, 272 NY 608). In fact, if such a certificate is denied to an owner under such circumstances, he may compel its issuance (cf. Village of Sands Point v Sands Point Country Day School, 2 Misc 2d 885, affd 2 AD2d 769). Thus, the village may *347 secure compliance with its certificate of occupancy requirement, but whether it may deny such certificates to Guardian remains at issue.
As to this question, Northport predicates its position upon section 18C(3) of its subdivision regulations and the developer’s original promise to make the platted improvements. Section 18C(3) provides that where a building permit for a model house is granted prior to final plat approval, issuance of the certificate of occupancy must await completion of on- and off-site improvements. Unfortunately for the village, its reliance on the builder’s word is misplaced because there was no authority to rely upon such a promise (cf. Lunmor Homes v Johnson, 122 NYS2d 149), and section 18C(3) must be construed solely as providing an interim safeguard to the planning board until performance bonds guaranteeing installation of improvements were posted.
Under subdivision 1 of section 7-730 of the Village Law, a village "alternatively” may require prior completion of necessary .improvements before it approves a plat, or, in lieu of prior completion, it may accept performance bonds guaranteeing completion in the future (see Opns St Comp, 71-886; 26 Opns St Comp, 1970, p 99; 1973 Opns Atty Gen [Inf], p 108; see, also, Matter of Brous v Smith, 304 NY 164; Matter of Incorporated Vil. of Garden City v Farber, 23 AD2d 668). If a village elects the second alternative, once the map is approved and the performance bond is furnished building permits will be issued and the developer and individual lot owners may proceed with the erection of buildings (see Tuckerman v Dassler, 121 NYS2d 205). This procedure results in earlier approval of plats and protects the municipality as well as prospective residents against failure on the part of the developer to complete the improvements (1 Anderson, New York Zoning Law and Practice, § 15.22). The boundaries of municipal planning power are set by the Legislature (Nemeroff Realty Corp. v Kerr, 38 AD2d 437, affd 32 NY2d 873), and a planning board lacks authority to adopt a subdivision regulation exacting further consideration from the developer once it determines to accept a performance bond in lieu of completion (cf. Levine v Town Bd. of Carmel, 34 AD2d 796). Having chosen to rely on performance bonds as an alternative to awaiting prior completion of the Rustic Acres improvements, the village may not now reverse its decision and demand both (cf. Matter of Lodico v Herdman, 44 AD2d 556).
*348 Plaintiffs argue further, however, that Guardian’s houses are illegal structures because the underlying plat approvals were granted wrongfully thus rendering the building permits void. Under traditional vested rights analysis there can be no reliance upon a void permit (Marcus v Village of Mamaroneck, 283 NY 325) and construction based on such a permit is illegal (Ellentuck v Stein, 44 AD2d 714). The claim that the Rustic Acres plats were unlawful from the beginning is predicated on the fact that the section of the Northport Code, under which they were approved, subsequently was declared illegal in Daly v Eagan (77 Misc 2d 279), a case which postdated completion of Guardian’s houses. The essence of Guardian’s posture in opposition to this argument is that it made an investment of $254,900 in the construction of the houses in reliance on duly approved plats and duly issued building permits, as a consequence of which equitable principles now preclude the plaintiffs from disavowing their prior actions and enactments.
Section 7-738 of the Village Law provides that a planning board may modify zoning regulations in connection with the approval of plats if the modification has been authorized by the village board of trustees in a resolution which shall "specify the lands to which” it applies. In Northport, the authorization resolution is section 52-9 of the Northport Code which states that the planning board may make reasonable changes in the official zoning map in connection with plat approval provided the changes do not increase the average density of population or cover the land with buildings beyond that permitted in the zoning district. In Daly, section 52-9 was held to constitute an illegal delegation of legislative power because it does not specify the land over which the planning board has zoning modification jurisdiction. The defendants have made no serious effort to challenge Daly’s soundness, and the case has received at least partial approbation in Matter of Rouse v O’Connell (78 Misc 2d 82). However, plaintiffs’ current reliance on Daly can only be justified if the holding can be applied retroactively.
At common law there was no authority for the proposition that judicial decisions made law only for the future (Linkletter v Walker, 381 US 618). When a statute was declared unconstitutional in a case of first impression, the traditional law was that the invalidated statute "confers no rights; it imposes no duties; it affords no protection; it creates no office; *349 it is, in legal contemplation, as inoperative as though it had never been passed.” (Norton v Shelby County, 118 US 425, 442.) Similarly, the overturn of pre-existing judicial precedents was given retrospective effect (Currier, Time and Change in Judge-Made Law: Prospective Overruling, 51 Va L Rev 201) on the rationale that an overruled judicial decision did not become bad law; it was considered never to have been the law and the reconsidered pronouncement regarded the law from the beginning (People ex rel. Rice v Graves, 242 App Div 128, affd 270 NY 498, cert den 298 US 683).
Although nonretroactive application of an overruling judicial determination received recognition as an equitable principle in this State as early as 1874 (see Harris v Jex, 55 NY 421), the doctrine of nonretroactivity achieved broader respectability when it was enunciated by Cardozo, J., in Great Northern Ry. Co. v Sunburst Co. (287 US 358; see Schaefer, Control of "Sunbursts”: Techniques of Prospective Overruling, 42 NYU L Rev 631). In 1940, the still emerging rule received further impetus when the court observed that a new judicial declaration cannot always erase the past, the questions of vested rights, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in light of the nature both of the statute and of its previous application, demand examination (Chicot County Dist. v Baxter State Bank, 308 US 371, reh den 309 US 695). Sunburst and Chicot were the authoritative precursors of the modern reluctance to indulge the fiction that "the law now announced has always been the law” (see DeMatteis v Eastman Kodak Co., 520 F2d 409, 410) and the current rejection of the common-law view that an unconstitutional statute is as inoperative as though it had never been (Lemon v Kurtzman, 411 US 192). It is no longer the law that an invalid statute may confer no rights and, indeed, reliance interests are entitled to sympathetic consideration in nonretroactivity analysis (see e.g., Bradley v Richmond School Bd., 416 US 696; Cipriano v City of Houma, 395 US 701; Simpson v Union Oil Co., 396 US 13; Harris v Jex, 55 NY 421, supra; People ex rel. Rice v Graves, supra).
More specific guidelines for nonretroactivity analysis are stated in Chevron Oil Co. v Huson (404 US 97, 106-107) as follows: "First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see *350 e.g., Hanover Shoe v United Shoe Machinery Corp., supra [392 US], at 496, or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., Allen v State Board of Elections, supra [393 US], at 572. Second, it has been stressed that 'we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.’ Linkletter v Walker, supra [381 US], at 629. Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice of hardship” by a holding of nonretroactivity. ’ Cipriano v City of Houma, supra [395 US], at 706.”
The Chevron principles establish the propriety of giving nonretroactive effect to the Daly holding as a case of first impression "whose resolution was not clearly foreshadowed.” Such nonretrospective application also will have no effect upon the future operation of Daly in other jurisdictions where it is nonbinding as a nisi prius determination. Finally, the sums expended for construction and the leases made in reliance upon building permits based upon plats previously approved under, an unchallenged and apparently regular ordinance would make retroactive application of Daly manifestly inequitable. The building inspector who issued the building permits was without jurisdiction to question the legality or constitutionality of the ordinance (9 McQuillin, Municipal Corporations, § 26.211; see 16 Am Jur 2d, Constitutional Law, § 128), and to this date the village has never repealed or replaced it.
There is no fixed formula which measures the content of all the circumstances whereby a party is said to possess "a vested right”; it is a term, rather, which sums up a judicial determination that the facts of the case render it inequitable that the State impede the individual from taking certain action (Matter of Lefrak Forest Hills Corp. v Galvin, 40 AD2d 211, affd 32 NY2d 796, cert den 414 US 1004). On the instant facts, Guardian’s substantial investment in building construction in reliance upon plats approved and filed under an existing State statute, an apparently regular ordinance, and building permits duly issued by the building inspector precludes retrospective imposition of the Daly determination as a device to prevent the use of the houses.
*351 Plaintiffs’ final contention is that the defendants are not entitled to article 78 relief because of their failure to exhaust administrative remedies. But there are no such remedies to exhaust because the refusal to issue the certificates of occupancy was stated to be pursuant to the building code and the planning board regulations and not the zoning ordinance. Nothing has been submitted to indicate that the Northport zoning board of appeals has been empowered under subdivision 2 of section 7-712 of the Village Law or by local ordinance, to hear and determine issues arising under the code and regulations cited. Moreover, failure to exhaust administrative remedies where such exist is not necessarily fatal to the court’s jurisdiction where a determination involves the construction of a statute (Byer v City of New York, 50 AD2d 771) or where the right to relief in the nature of mandamus is predicated on a constitutional claim of vested rights (Matter of Glenel Realty Corp. v Worthington, 161 NYS2d 777). The constitutional issues raised by the plaintiffs themselves relative to their unrepealed ordinance are not within the jurisdiction of any administrative body of the village (Matter of Wesley Chapel v Van Den Hende, 32 AD2d 565, mod on other grounds 25 NY2d 930).
The motion for a preliminary injunction is denied and the complaint is dismissed. The defendants are granted judgment on their second counterclaim and the plaintiffs are directed to issue the certificates of occupancy demanded provided the structures themselves comply with building code provisions or any other regulations relating to structural, fire or other safety requirements.