■ In the Matter of LYNN AUGENBLICK, Petitioner, and MAXWELL GLANTZ et al., Appellants, v TOWN OF CORTLANDT et al., Respondents. — In a proceeding pursuant to CPLR article 78 to review the determinations of the Planning Board of the Town of Cortlandt and the Town Board of the Town of Cortlandt in authorizing the adoption of a resolution permitting the manufacture of asphalt on a particular parcel within a light industrial district, the appeal is from a judgment of the Supreme Court, Westchester County (Leggett, J.), entered November 18, 1982, which dismissed the petition.

Judgment affirmed, with one bill of costs.

The Zoning Ordinance of the Town of Cortlandt was first adopted in October, 1951. Section 88.21 (subd A, par [4]) of said

ordinance enumerates the uses permitted within M-1 light industrial districts. Included among those uses is the following: "Any manufacturing or other industrial operation from which no dust, smoke fumes, gas, noxious odor or other atmospheric pollutant is disseminated beyond the boundaries of the M-1 District in which such use is located, and which produces no noise or vibration exceeding in intensity at the boundary of such M-1 District the average intensity of noise or vibration at that point resulting from other causes. The Planning Board, after public hearing and approval by the Town Board in each case, shall, by resolution, establish and from time to time revise a list of uses conforming to the foregoing standards, including any conditions to which any of such uses shall be subject in order to assure such conformity".

On May 4, 1982, the respondent Town Board adopted a resolution scheduling a public hearing for the purpose of considering the proposed establishment by the Town Board of a list of permitted uses in M-1 districts pursuant to section 88.21 (subd A, par [4]) of the Zoning Ordinance. Upon the request of respondent Montrose Concrete Products Corp. (Montrose), said list of permitted uses was to include an "[a]sphalt manufacturing plant (blacktop batching plant) to be located on property designated on Tax Maps of the Town of Cortlandt as Section 14, Block 1, Lots 16 and 17". Pursuant to this resolution, a public hearing was conducted by the Town Board on May 18, 1982.

At the public hearing, detailed testimony was taken as to the environmental controls for the proposed asphalt manufacturing facility. A resident raised a complaint to the effect that other communities permit such plants only in heavy industrial areas. A colloquy then ensued regarding a proposed visit to a similar plant situated in a heavy industrial district in White Plains. On the positive side, the Town Assessor stated that the proposed plant would undoubtedly result in a gain of tax dollars for the town. As per the Assessor, the resulting tax gain would be substantial enough to warrant the operation. It was pointed out by Montrose's consulting engineer that the proposed facility would be built and operated in accordance with the most current standards established by both State and Federal authorities. At the conclusion of the public hearing, the matter was referred to the Committee of the Whole and placed on the agenda for the next Town Board meeting.

On June 15, 1982, a meeting of the Town Board was convened. The minutes of the meeting reveal that several members of the Town Board had visited similar plants in the metropolitan area and had consulted with local residents who had no complaints

about vibrations, odors or traffic problems. The Town Assessor advised the Town Board that the subject plant would be assessed and would become a "tax ratable within the town". The existence of a letter from the Conservation Advisory Council voicing environmental concerns pertaining to the operation of the proposed facility was made a matter of public record. At the conclusion of the meeting, however, Resolution 206-82 was adopted by the Town Board authorizing the establishment of a list of permitted uses in light industrial districts pursuant to section 88.21 (subd A, par [4]) of the Zoning Ordinance, which list would include an asphalt manufacturing or blacktop batching plant situated on the designated property. In the course of its resolution, the Town Board made a determination that the proposed action would have no significant adverse environmental impact. On June 23, 1982, the Town Planning Board adopted Resolution 24-82, which established a list of permitted uses in M-1 light industrial districts, specifically including the subject facility.

Petitioners, as owners and residents of property in close proximity to the proposed use, commenced this proceeding to review the determinations of the Town Board and Town Planning Board. The petitioners alleged that the use and enjoyment of their parcels would be impaired by the dust, smoke, fumes, gas, odor, atmospheric pollution, noises and vibrations which would emanate from the construction and operation of an asphalt plant upon the parcel owned by Montrose. Petitioners contended that the actions taken by the respective Boards were arbitrary and capricious in view of the absence of a finding that the proposed plant conformed to the standards set forth in the ordinance and that the determinations under review were not supported by substantial evidence.

Special Term, after denying a motion by respondents to dismiss the petition pursuant to CPLR 7804 (subd [f]), dismissed the petition on the merits, finding that the Town Board and the Town Planning Board had acted in accordance with powers validly granted to them by the Town Law and the Town of Cortlandt Zoning Ordinance. The appeal is from the dismissal of the petition.

It is contended that the actions of the two Boards effectively confer a discriminatory benefit upon respondent Montrose in violation of the requirements of uniformity and comprehensive planning. In essence, appellants charge that the procedure by which the Boards adopted the resolutions authorizing the operation of an asphalt manufacturing plant in a light industrial zone constituted a form of spot zoning. Moreover, they contend that proper judicial review is impossible in view of the Boards' failure

to have delineated the findings which provided the basis for the subject determinations (see *Matter of Syracuse Aggregate Corp. v Weise,* 51 NY2d 278, 283-284; *Matter of Sherman v Frazier,* 84 AD2d 401, 411).

Section 88-21 of the Town of Cortlandt Zoning Ordinance represents a comprehensive plan to segregate uses of property within the town based upon the projected impact which such uses are likely to have upon neighboring properties. While towns and other municipal authorities have no inherent power to enact or enforce zoning or land use regulations, the requisite authorization to exercise zoning and planning functions is found in article 16 of the Town Law (*Matter of Kamhi v Planning Bd.,* 59 NY2d 385, 389).

Section 261 of the Town Law grants to town boards the general authority to regulate the use of the land within their respective town boundaries for the purpose of promoting the health, safety, morals or the general welfare of the community. Section 264 of the Town Law affords a town board the authority to "provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced, and from time to time amended, supplemented or changed". Section 274-a (subd 1, par a) of the Town Law permits a town board, when acting pursuant to a local zoning ordinance which enumerates particular uses permitted only upon compliance with conditions specified in such ordinance, to authorize a planning board to approve the establishment of such uses upon determining compliance with the requisite conditions. It is thus evident that the Cortlandt Town Board and Planning Board, acting pursuant to an ordinance adopted in compliance with article 16 of the Town Law, were authorized to act as they did.

While the power to enact zoning regulations is a far-reaching one, it is not without its limitations. It is well settled that it may be exercised only pursuant to some valid public purpose rather than being used to justify some arbitrary exclusionary efforts (*Group House of Port Washington v Board of Zoning & Appeals,* 45 NY2d 266, 271). "A zoning ordinance will be invalidated on both constitutional and State statutory grounds if it was enacted with an exclusionary purpose, or it ignores regional needs and has an unjustifiably exclusionary effect" (*Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338, 343, cert den 450 US 1042). As in other areas of the law, however, the distinction between what constitutes legitimate and illegitimate exercises of the zoning power cannot be drawn by recourse to a

clear-cut formula. Rather, it varies with surrounding circumstances and conditions (*Maldini v Ambro,* 36 NY2d 481, app dsmd 423 US 993).

We conclude that the condition which the Town Board placed upon its approval of an asphalt manufacturing plant in an M-1 zone, i.e., the requirement that this use be limited to a particular section, block and lot within the district, was reasonable and proper. While uniformity within use districts is generally favored, courts now recognize that reasonable conditions may be attached to a use regulation in order to achieve the over-all intent of the zoning ordinance (see *Collard v Incorporated Vil. of Flower Hill,* 52 NY2d 594, 599). It bears noting that zoning is not invalid per se due merely to the fact that a single parcel is involved or benefited. The test for ascertaining whether a measure constitutes spot zoning is whether the change is other than part of a well-considered and comprehensive plan intended to promote the general welfare of the community (*Collard v Incorporated Vil. of Flower Hill, supra,* p 600).

While it would clearly be unreasonable to extend blanket approval for the type of use at issue here to all parcels within M-1 districts without first reviewing such variables as size and location of the parcel, topography and proximity to neighbors, this was not what occurred in the instant case. Rather, the decision to permit the operation of an asphalt manufacturing plant on one limited site was a carefully engineered and thoroughly discussed determination rendered in consideration of the health, welfare and controlled growth of the community.

Consistent with the mandate of article 16 of the Town Law, town boards should be afforded as much leeway as possible in regulating the use of land within their respective municipalities in order to promote the health, safety and general welfare of the community. Inasmuch as appellants have failed to sustain their burden of establishing that the determinations under review were not justified under the local police power (*Shepard v Village of Skaneateles,* 300 NY 115, 118), it is not this court's responsibility to substitute its decision for that of the respondent Boards.

The information adduced at both the public hearing and the Town Board meeting clearly provided the respondent Boards with a sufficient record upon which to base their determinations. Testimony regarding environmental controls and tax benefits, as well as the results of inspections of already existing plants of a similar nature and operation, provided the factual underpinning for the determination to permit Montrose's proposed use. Thus, appellants' contention that judicial review is impossible is without basis.

We have considered appellants' remaining contentions and find them to be without merit. Inasmuch as the actions of the Town Board and Town Planning Board conformed to the requirements of the Zoning Ordinance, the petition was properly dismissed. Gibbons, Weinstein, and Eiber, JJ., concur.

Lazer, J. P., dissents and votes to reverse the judgment appealed from and grant the petition, with the following memorandum in which Boyers, J., concurs: The issue here is the validity of certain actions of the Town Board and Planning Board of the Town of Cortlandt which resulted in the rezoning of a parcel of approximately 20 acres in the M-1 light industrial district to permit installation of an asphalt manufacturing plant. Claiming that these actions illegally delegated legislative power to the Planning Board, violated uniformity requirements, and constituted spot zoning, the owners of nearby residential and commercial properties instituted this article 78 proceeding to annul the rezoning. Special Term dismissed the petition and the majority has voted to affirm. I conclude that the zoning power was illegally delegated, that uniformity of zoning requirements in the M-1 district was illegally violated, and the purported rezoning constituted spot zoning as well. Consequently, I vote to reverse and to declare the zoning resolutions invalid.

The property involved is owned by the Montrose Concrete Products Corp. and is located in the M-1 light industrial district. At the time of the rezoning at issue, it contained a cement manufacturing plant operating as a legal nonconforming use. The property lies to the east of Route 9A, a four-lane highway with commercial strip zoning on each side. To the rear of the commercial strip on the westerly side of the road is a large single-family housing development. Permitted in the M-1 district, which lies to the east of the strip zone, are electrical power plants, exterminating establishments, lumber yards and any other industrial operation "from which no dust, smoke, fumes, gas, noxious odor or other atmospheric pollutant is disseminated beyond the boundaries of the M-1 District * * * and which produces no noise or vibration exceeding in intensity at the boundary of such M-1 District the average intensity * * * resulting from other causes." (Town of Cortlandt Zoning Ordinance, § 88-21, subd A, par [4].)

Section 88-21 (subd A, par [4]) of the Zoning Ordinance also contains a rather unique provision which provides: "[T]he Planning Board, after public hearing and approval by the Town Board in each case, shall, by resolution, establish and from time to time revise a list of uses conforming to the * * * [mentioned] standards [relating to dust, smoke fumes and noise], including

any conditions to which any of such uses shall be subject in order to assure such conformity."

Acting pursuant to these provisions, the Town Board held a public hearing and adopted a resolution authorizing the Planning Board to establish a list of permitted uses in M-1 districts which would include: "asphalt manufacturing plant (blacktop batching plant) to be located on property designated on the tax maps of the Town of Cortlandt as Section 14, Block 1, Lots 16 and 17". The property described was the location of the Montrose concrete plant. A week later the Planning Board exercised the authority thus delegated to it and adopted a resolution authorizing asphalt manufacture on the Montrose property by inserting the reference to the Montrose property as an added permitted use in the M-1 district. The Montrose parcel was thus rezoned to permit asphalt manufacture in the M-1 light industrial district, but the use quite clearly remained forbidden to all other owners in the district.

Appellants' first challenge is to the legality of the Town Board's delegation of power to the Planning Board to adopt resolutions that would amend the Zoning Ordinance by adding uses to those set forth in the ordinance. The municipal respondents reply that the necessary authority is to be found in section 274-a (subd 1, par b) of the Town Law which provides that: "[w]here a zoning ordinance * * * specifies particular uses which are permitted only upon compliance with conditions specified in such ordinance * * * the town board may * * * authorize the planning board to approve the establishment of such uses upon determining compliance with such conditions."

In my view, the municipal respondents have misread the statute. All section 274-a empowers town boards to delegate to planning boards is power to issue special permits for particular uses conditionally permitted in the zoning ordinance (*Matter of Stato v Squicciarini,* 59 AD2d 718, app dsmd 44 NY2d 816), subject to proof that conditions specified in the zoning ordinance for such uses are met (Department of State memorandum, Governor's Bill Jacket, L 1976, ch 272; 3 Rathkopf, Law of Zoning and Planning, § 41.07). Section 274-a thus allows town boards to delegate to planning boards the same type of special permit powers as they have traditionally delegated to boards of zoning appeals — to determine whether applicants for conditionally permitted special uses named in the ordinance have met the conditions specified in the ordinance.

Section 88-21 of the Cortlandt ordinance does not deal with special permits for conditionally permitted uses and the actions both Boards took relying on the section have no connection with

the issuance of a special permit. Montrose recognized this, of course, for it never applied for a special permit nor sought to demonstrate compliance with any standards for the issuance of a special permit (see *Matter of Tandem Holding Corp. v Board of Zoning Appeals,* 43 NY2d 801). Nor could it have done so — asphalt manufacturing is not a conditionally permitted use under the Cortlandt ordinance. What section 88-21 authorizes the Planning Board to do is to amend the Zoning Ordinance by adding new uses to those the Town Board particularized when it enacted the ordinance. Since only the legislative body can amend a zoning ordinance or alter the uses permitted in a zoning district, the delegation to the Planning Board was illegal for it is basic that such an administrative agency cannot be vested with legislative functions (see *Gilchrest Realty Corp. v Village of Great Neck Plaza,* 275 App Div 962, affd 300 NY 619; *Langer v Planning & Zoning Comm.,* 163 Conn 453; 3 Rathkopf, Law of Zoning and Planning, § 41.05 [2]).

The municipal respondents do not argue, however, that Montrose was given a special permit or that section 88-21 gave the Planning Board the ministerial function of rubber-stamping new uses after they were approved by the Town Board. They asserted instead that section 274-a of the Town Law did authorize the delegation of legislative power. They thus contend that section 88-21 gave the Planning Board the real power to formulate a list of new uses to be permitted under the ordinance as long as the Town Board approved them in advance but with final power to determine whether a use was to be added to the ordinance vested in the Planning Board. Since the Town Board could not delegate its power beyond what the enabling statute permitted, however (*Nemeroff Realty Corp. v Kerr,* 38 AD2d 437, affd 32 NY2d 873), its attempt to delegate legislative authority to the Planning Board was void.

The purported amendment of the ordinance is also a nullity because it violates the uniformity mandate of section 262 of the Town Law. That section provides that "the town board may divide * * * the town * * * into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this act; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings, structures or land. *All such regulations shall be uniform for each class or kind of buildings, throughout such district*" (emphasis added). This provision, derived from section 2 of the Standard State Zoning Enabling Act, is similar to the sections in zoning enabling acts governing cities and villages (General City Law, § 20, subd 24; Village Law, § 7-702) and

comports with the enabling acts adopted in nearly every State in the union (3 Anderson, American Law of Zoning, § 19.05). Uniformity is fundamental to "Euclidian" zoning by which a community is divided into basic use categories such as residential, commercial and industrial (6 Rohan, Zoning and Land Use Controls, § 40.01 [1]; see *Euclid v Ambler Co.*, 272 US 365).

The uniformity requirement is intended to assure property holders that all owners in the same district will be treated alike and that there will be no improper discrimination (*Veseskis v Bristol Zoning Comm.*, 168 Conn 358; 6 Powell, Real Property, par 869; Aloi, Legal Problems in Planned Unit Development, 1 Real Estate LJ 5). The likelihood of overreaching is thus reduced because the legislative body preapproves the uses permitted in a district without reference to particular owners (Tondro, Euclidian Zoning and Special Permits: Problems in Connecticut's Land Use Regulation Law, 52 Conn BJ 167). Uniformity requirements may transcend mere statute, however, for it has been held that the Constitution requires that all land in similar circumstances be treated alike (*Schmidt v Board of Adj.*, 9 NJ 405; 1 Williams, American Land Planning Law, § 31.01; Note, 15 U of Rich L Rev 423). Where specialized circumstances exist for certain property within a district the uniformity rule may be bent (6 Rohan, Zoning and Land Use Controls, § 40.10 [1]; 1 Williams, American Land Planning Law, § 31.01), and everyone is aware of rezonings subject to conditions that approach contractual arrangements (see *Church v Town of Islip,* 8 NY2d 254). These exceptions are not applicable here, however.

An ordinance will be held to uniformity if the record does not disclose any reasonable basis for different treatment among similar parcels within a district (see 1 Anderson, American Law of Zoning, § 5.22). Declared invalid under this concept have been ordinances that permitted mobile homes or two-family homes on specified parcels within a residential district and not others (see, e.g., *Jackson & Perkins Co. v Martin,* 12 NY2d 1082; *Klebetz v Town of Ramapo,* 109 Misc 2d 952) or that permitted retail stores or quarries in a specified part of a district and not in others (see, e.g., *Gilchrest Realty Corp. v Village of Great Neck Plaza,* 300 NY 619, *supra; Callanan Rd. Improvement Co. v Town of Newburgh,* 6 Misc 2d 1071, affd 5 AD2d 1003). Here, the Planning Board rezoned one parcel in the M-1 district to permit a use forbidden for all other parcels in the district (see *Blumberg v City of Yonkers,* 21 AD2d 886, affd 15 NY2d 791; *Boerschinger v Elkay Enterprises,* 32 Wis 2d 168). By singling out the Montrose parcel, the resolution flouted the uniformity command of the statute (see *Jackson & Perkins Co. v Martin, supra*), for the record reflects no circumstances warranting the rezoning.

At the public hearing, the only reasons articulated for treating the Montrose property differently than all others in the M-1 district were the potential for additional jobs and tax revenues. Differential treatment of parcels within the same district may not be justified on those bases alone, because the tax base generally is enhanced when a zoning change permits a more profitable use to be made of property (1 Williams, American Law Planning Law, § 27.05; 5 Rohan, Zoning and Land Use Controls, § 38.02 [3]). If revenue enhancement alone is to become a sufficient basis for rezoning, long-established zoning principles will be nullified merely to generate the maximum amount of real property taxes. What is required for differential treatment is that the land be uniquely situated (see, e.g., *State v Gallop Bldg.,* 103 NJ Super 367), and this record establishes no foundation for differential treatment. While Montrose may continue to manufacture cement as a legal nonconforming use, it may not " 'enlarge that use as a matter of right' " (*Matter of Crossroads Recreation v Broz,* 4 NY2d 39, 42; see *Matter of Albert v Board of Stds. & Appeals,* 89 AD2d 960) and the mere existence of such a nonconforming use cannot justify differential treatment (see *Jackson & Perkins Co. v Martin,* 12 NY2d 1082, *supra*). Making the existence of a nonconforming use the basis for a rezoning rewards the nonconforming user, contravenes the strong policy intended to achieve the ultimate elimination of nonconforming uses (see *Matter of Syracuse Aggregate Corp. v Weise,* 51 NY2d 278; *Matter of Off Shore Rest. Corp. v Linden,* 30 NY2d 160) and diminishes the effectiveness of the comprehensive zoning plan (see *Matter of Albert v Board of Stds. & Appeals, supra*).

Finally, the challenged resolutions are a clear example of spot zoning (see *Blumberg v City of Yonkers,* 15 NY2d 791, *supra*), for they constitute a rezoning for the benefit of a single owner for a specific purpose only — spot zoning in its most maleficient aspect (see *Matter of Dexter v Town Bd.,* 36 NY2d 102). If valid legal reasons exist for the rezoning resolution of the Planning Board, they are not revealed by the record; the resolution seems to be "special interest, irrational *ad hocery*" (*Matter of Town of Bedford v Village of Mount Kisco,* 33 NY2d 178, 188).

Accordingly, I vote to grant the petition, declare the resolutions void on the grounds of illegal delegation of power and violation of the uniformity mandate and as spot zoning.