CHARLES SHUMAKER, JR., et al., Appellants, v TOWN OF CORT-LANDT et al., Defendants-Respondents. (Matter No. 1.)

SANDPORT SUPPLY CORP. et al., Respondents, v TOWN OF CORT-LANDT et al., Defendants. (Matter No. 2.)

Second Department, February 2, 1987

### APPEARANCES OF COUNSEL

*Walter I. Seligsohn* for appellants.

*Richard C. Fields, P. C.,* for Joseph Bilotta, defendant-respondent in matter No. 1, and Sandport Supply Corp. and another, respondents in matter No. 2.

### OPINION OF THE COURT

MANGANO, J. P.

The Zoning Ordinance of the Town of Cortlandt was first adopted in October 1951. Cortlandt Town Code § 88.21 (A) (4), a provision of that zoning ordinance, enumerates the uses permitted within M-1 light industrial districts. Those uses include: "Any manufacturing or other industrial operation from which no dust, smoke fumes, gas, noxious odor or other atmospheric pollutant is disseminated beyond the boundaries of the M-1 District in which such use is located and which produces no noise or vibration exceeding in intensity at the boundary of such M-1 District the average intensity of noise or vibration at that point resulting from other causes. The Planning Board, after public hearing and approval by the Town Board in each case, shall, by resolution, establish and from time to time revise a list of uses conforming to the foregoing standards, including any conditions to which any of such uses shall be subject in order to assure such conformity".

On May 4, 1982, the Town Board adopted a resolution scheduling a public hearing for the purpose of considering the proposed establishment by the Town Board of a list of permitted uses in M-1 districts pursuant to Cortlandt Town Code § 88.21 (A) (4). Upon the request of Montrose Concrete Products Corp. (hereinafter Montrose), the list of permitted uses was to include an "[a]sphalt manufacturing plant (blacktop batching plant) to be located on property designated on Tax Maps of the Town of Cortlandt as Section 14, Block 1, Lots 16

and 17" *(see, Matter of Augenblick v Town of Cortlandt,* 104 AD2d 806, 807). Pursuant to this resolution, a public hearing was conducted by the Town Board. At the conclusion of the hearing, Resolution 206-82 was adopted by the Town Board authorizing the establishment of a list of permitted uses in light industrial districts pursuant to Cortlandt Town Code § 88.21 (A) (4), which list would include an asphalt manufacturing or blacktop batching plant situated on the designated property. On June 23, 1982, the Town Planning Board adopted Resolution 24-82, which established a list of permitted uses in M-1 light industrial districts, specifically including the subject facility.

Thereafter, certain owners and residents of property in close proximity to the proposed use commenced a proceeding to review the determinations of the Town Board and the Town Planning Board. These petitioners argued that the actions of the two Boards conferred "a discriminatory benefit upon respondent Montrose in violation of the requirements of uniformity and comprehensive planning" and constituted improper spot zoning *(Matter of Augenblick v Town of Cortlandt, supra,* at p 808).

By judgment dated November 18, 1982, Special Term dismissed the proceeding on the merits, finding that "the Town Board and the Town Planning Board had acted in accordance with powers validly granted to them by the Town Law and the Town of Cortlandt Zoning Ordinance" *(Matter of Augenblick v Town of Cortlandt, supra,* at p 808).

On appeal, a majority of this court, by order dated October 1, 1984, affirmed Special Term's dismissal of the proceeding on the merits, finding that (1) the Town Board was authorized to allow the Planning Board to create a list of permissible uses pursuant to Town Law article 16, (2) the challenged resolutions did not violate the uniformity requirement of Town Law § 262 which mandates uniformity of use within zoning districts, and (3) the challenged resolutions did not constitute impermissible spot zoning *(Matter of Augenblick v Town of Cortlandt, supra,* at pp 806-811).

In his dissent, former Justice Lazer opined that by virtue of the challenged resolutions (1) "the zoning power was illegally delegated" by the Town Board to the Planning Board, (2) "uniformity of zoning requirements in the M-1 district was illegally violated" and (3) the Town Board and Planning Board had engaged in improper spot zoning *(Matter of Augenblick v Town of Cortlandt, supra,* at p 811).

Three weeks after this court's decision in *Matter of Augenblick v Town of Cortlandt (supra)* and in what is conceded to be reliance thereon, Joseph Bilotta purchased that portion of the Montrose property which was the subject of the challenged zoning resolutions of the Town Board and Planning Board of the Town of Cortlandt.

On January 22, 1985, Sandport Supply Corp. (hereinafter Sandport) of which Bilotta was president, applied to the Planning Board for site plan approval of an asphalt plant on his property. On February 26, 1985, the petitioners in *Matter of Augenblick v Town of Cortlandt (supra)* served a copy of this court's order with notice of entry on Montrose and the Town of Cortlandt and filed a notice of appeal to the Court of Appeals.

At the hearing conducted on March 12, 1985, upon Sandport and Bilotta's application for site plan approval of an asphalt plant, Bilotta's attorney informed the Town Planning Board that his client was aware that an appeal by the petitioners in *Matter of Augenblick v Town of Cortlandt (supra)* was pending in the Court of Appeals. The petitioners in *Matter of Augenblick v Town of Cortlandt* who attended the Town Planning Board's hearing on Sandport and Bilotta's application for site plan approval, did not voice any objections at the hearing. However, on April 1, 1985, the attorney for the petitioners in *Matter of Augenblick v Town of Cortlandt (supra)* wrote a letter to the Town Director of Planning, Town Engineer and Town Building Inspector, with a copy to Sandport, stating as follows:

"Gentlemen:

"As you know, the above special proceeding has been appealed by the petitioners to the Court of Appeals of the State of New York. Briefs will shortly be filed and the matter will undoubtedly be heard by the Court later this year.

"It has come to our attention that a portion of the property has been transferred to Sandport Supply Corp. and that Sandport has applied to the Planning Board for site plan approval and that such approval has been granted. We raise no objection to the Planning Board action inasmuch as there is no reason why the owner cannot get preliminary administrative matters out of the way while the appeal is pending.

"A different situation would be presented if the owner applied for zoning and building permits. Obviously, construction should not begin, nor final approval for construction be given until the Court has ruled.

"Therefore, I request that you advise me if and when applications for zoning and building permits are filed and, especially, if and when such permits are granted."

On May 17, 1985, the petitioners in *Matter of Augenblick v Town of Cortlandt (supra)* served and filed their brief in the Court of Appeals.

On July 2, 1985, the Town of Cortlandt granted a zoning and building permit and on July 3, 1985, it granted a building permit for the construction of an asphalt plant. Contrary to the request contained in the petitioners' attorney's letter dated April 1, 1985, no notice of the applications for the permits or of the issuance of the permits was given to any of the petitioners in *Matter of Augenblick v Town of Cortlandt (supra)*. Approvals were also obtained from the New York State Department of Environmental Conservation and the Westchester County Health Department. Thereupon, Bilotta invested $1,500,000 in construction of the plant, and virtually completed construction of the plant before *Matter of Augenblick v Town of Cortlandt (supra)* was argued in the Court of Appeals in October 1985. During the argument before the Court of Appeals, the attorney for Montrose stated that the asphalt plant had been built. On October 9, 1985, the attorney for the petitioners in *Matter of Augenblick v Town of Cortlandt (supra)* again wrote to the Town Director of Planning, the Town Engineer and the Town Building Inspector, with a copy to Sandport, stating as follows:

"The appeal in the above matter was argued before the New York Court of Appeals on October 8, 1985. During argument, Mr. Donald Tirschwell, attorney for Montrose Concrete Products, stated to the Court that the asphalt plant had already been built.

"Therefore, I am writing to ask that you let me know whether zoning and building permits or a Certificate of Occupancy have been applied for or granted with respect to an asphalt plant on the land now or formerly of Montrose Concrete Products. I would also appreciate it if you will let me know whether, according to your information, such a plant has been constructed".

On November 12, 1985, the Court of Appeals reversed the order of this court, and granted the petition "for the reasons stated in the dissenting memorandum by Justice Leon D. Lazer at the Appellate Division" *(Matter of Augenblick v Town of Cortlandt,* 66 NY2d 775, 777).

In December 1985, i.e., after the decision of the Court of Appeals in *Matter of Augenblick v Town of Cortlandt (supra)*, Bilotta requested that the Town of Cortlandt issue a certificate of occupancy and zoning compliance which was needed to commence operations at the plant. The application was denied by the Director of Planning on February 11, 1986, "per Court of Appeals decision in *Augenblick et al. v Town of Cortlandt*".

In February 1986 Shumaker, Schneider and Purcell commenced a hybrid proceeding and action (matter No. 1) which sought, *inter alia,* a permanent injunction against Bilotta, prohibiting construction or operation of the asphalt plant, compelling Bilotta to remove the plant and restore the property, and compelling the town defendants-respondents to revoke all zoning and building permits issued and restraining them from issuing to Bilotta a certificate of occupancy and zoning compliance.

In their answer dated March 7, 1986, to the petition and complaint, the town defendants-respondents alleged as an affirmative defense, that the permits already issued need not be revoked because permits issued in violation of the town's Zoning Ordinance were automatically void. They further alleged that Bilotta's application for a certificate of occupancy and zoning compliance had already been denied. Finally, the town defendants-respondents also cross-claimed for a judgment declaring whether they were obligated, as a matter of law, to issue a certificate of occupancy and zoning compliance to Bilotta. This cross claim by the town defendants-respondents for declaratory relief was made in response to a companion action (matter No. 2) commenced by the plaintiffs Bilotta and Sandport on or about February 19, 1986, against the aforementioned town defendants-respondents (except the Town Board), as well as the Town Building Inspector, wherein Bilotta sought a judgment declaring, *inter alia,* (1) that it would be inequitable to enforce the decision of the Court of Appeals in *Matter of Augenblick v Town of Cortlandt (supra)*, retroactively, (2) that the Town of Cortlandt could not revoke permits previously issued, and (3) that the Town of Cortlandt had to issue a certificate of occupancy and zoning compliance. In its answer to Bilotta and Sandport's action, the town defendants-respondents alleged in matter No. 1, *inter alia,* that the issuance of a certificate of occupancy and zoning compliance was barred by the decision of the Court of Appeals in *Matter of Augenblick v Town of Cortlandt.* In a counterclaim, the town defendants in that action sought a judgment

"declaring the rights of the parties with respect to the retroactive application of the decision of the Court of Appeals in *Matter of Augenblick vs. Town of Cortlandt*".

By notice of motion dated March 11, 1986, after joinder of issue, the plaintiffs Bilotta and Sandport in matter No. 2 moved for partial summary judgment on the first, second, fourth and fifth causes of action of their complaint. In an affidavit in support of the motion, Bilotta argued that he purchased the property in reliance upon this court's original affirmance of the dismissal of the proceeding challenging the subject zoning resolutions. He further argued that he was issued site plan approval, Environmental and Health Department approval and building permits without opposition and that he then spent approximately $1,500,000 to construct the plant. Bilotta concluded that because the plant was constructed at great expense and in reliance upon what were then valid zoning resolutions, he had a vested right in the completion and operation of the plant and that it would be inequitable to prohibit its operation.

Shortly thereafter, the town defendants-respondents moved to consolidate the Bilotta-Sandport action (matter No. 2) and the Shumaker proceeding and action (matter No. 1) on the ground that the lawsuits "involve not only common questions of law and fact, but *identical* questions of law and fact". By order dated March 21, 1986, the Supreme Court, Westchester County, granted the motion to consolidate to the extent of directing that "the matters should be heard and considered together".

Thereafter, in a lengthy decision on the merits dated May 29, 1986, the Supreme Court, Westchester County, held that: "plaintiffs [Bilotta and Sandport] are deemed to have a vested property right in the operation of their asphalt plant and that retroactive application of the decision of the Court of Appeals in *Augenblick v Town of Cortlandt,* a proceeding in which these plaintiffs were not parties, would create undue inequity and injustice, tantamount to unconstitutional deprivation and confiscation of these property rights". The Supreme Court, Westchester County, further held that the town parties were "barred from revoking any previously issued permits or approvals" and were to "issue all final permits and certificates necessary for operation of [Bilotta and Sandport's] plant". Accordingly, the court, *inter alia,* granted partial summary judgment to Bilotta and Sandport, on the first, second, fourth

and fifth causes of action of their complaint, and dismissed the hybrid action and proceeding.

Clearly, the crucial issue to be resolved in the instant appeal is whether the decision of the Court of Appeals in *Matter of Augenblick v Town of Cortlandt* (66 NY2d 775, *supra)* should be given retroactive effect. The guidelines governing the issue of the retroactive application of a judicial determination were lucidly set forth by former Justice Lazer, while sitting at Special Term, in the case of *Incorporated Vil. of Northport v Guardian Fed. Sav. & Loan Assn.* (87 Misc 2d 344, *affd* 54 AD2d 893).

In *Incorporated Vil. of Northport v Guardian Fed. Sav. & Loan Assn. (supra),* a number of model homes were constructed, based upon approved plats and building permits from the Village of Northport, and the sponsor of the model homes project invested over $250,000 in connection therewith. Thereafter, in litigation between the village and another party *(Daly v Eagan,* 77 Misc 2d 279), it was held that the section of the Village Code under which the plats were approved constituted an illegal delegation of legislative power to the Village Planning Board. The Village of Northport and its building inspector then commenced an action to enjoin the use of the model homes on the ground that "the underlying plat approvals were granted wrongfully thus rendering the building permits void" *(Incorporated Vil. of Northport v Guardian Fed. Sav. & Loan Assn.,* 87 Misc 2d 344, 348, *supra).* In opposition to the action, the sponsor of the project argued that "it made an investment of $254,900 in the construction of the houses in reliance on duly approved plats and duly issued building permits [and, therefore] equitable principles [precluded] the plaintiffs from disavowing their prior actions and enactments" *(Incorporated Vil. of Northport v Guardian Fed. Sav. & Loan Assn., supra,* at p 348). The resolution of this conflict was dependent upon whether or not the holding in *Daly v Eagan (supra),* was to be given retroactive effect. In deciding in favor of the defendant sponsor, i.e., that the holding in *Daly v Eagan (supra),* should not be given retroactive effect, former Justice Lazer summarized the governing guidelines regarding the issue of retroactive application of a judicial determination, as follows: "More specific guidelines for nonretroactivity analysis are stated in *Chevron Oil Co. v Huson* (404 US 97, 106-107) as follows: 'First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied,

see e.g., *Hanover Shoe v United Shoe Machinery Corp., supra* [392 US], at 496, or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., *Allen v State Board of Elections, supra* [393 US], at 572. Second, it has been stressed that "we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v Walker, supra* [381 US], at 629. Finally, we have weighed the inequity imposed by retroactive application for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice of hardship' by a holding of nonretroactivity." *Cipriano v City of Houma, supra* [395 US], at 706' " *(Incorporated Vil. of Northport v Guardian Fed. Sav. & Loan Assn., supra,* at pp 349-350).

Former Justice Lazer was of the view that each of the three guidelines in *Chevron Oil Co. v Huson* (404 US 97) favored the "propriety of giving nonretroactive effect to the *Daly* holding" *(Incorporated Vil. of Northport v Guardian Fed. Sav. & Loan Assn., supra,* at p 350). Specifically, with regard to the third guideline, i.e., weighing the inequity imposed by retroactive application, former Justice Lazer wrote *(Incorporated Vil. of Northport v Guardian Fed. Sav. & Loan Assn., supra,* at p 350): "Finally, the sums expended for construction and the leases made in reliance upon building permits based upon plats previously approved under an unchallenged and apparently regular ordinance would make retroactive application of *Daly* manifestly inequitable".

In the case at bar, the first two guidelines set forth in *Chevron Oil Co. v Huson (supra),* militate in favor of retroactive application of the Court of Appeals decision in *Matter of Augenblick v Town of Cortlandt (supra).* The determination of the Court of Appeals in *Matter of Augenblick v Town of Cortlandt (supra),* focused on well-established rules concerning the delegation of power from a Town Board to a Planning Board, uniformity of zoning, and spot zoning, and no sound public policy arguments can be raised for not giving retroactive application to a decision of the highest court of this State in this well-defined area of law *(cf. Linkletter v Walker,* 381 US 618). Clearly, in holding that the decision of the Court of Appeals in *Matter of Augenblick v Town of Cortlandt (supra)* should not be given retroactive application, the Supreme Court relied heavily on the third guideline in *Chevron Oil v*

*Huson (supra),* i.e., it was influenced by the very substantial sum of money expended by Bilotta prior to the holding of the Court of Appeals in *Matter of Augenblick v Town of Cortlandt (supra),* and the apparent injustice that Bilotta would suffer if he could not operate the plant.

In response to this argument, the petitioners argued, in the words of the Supreme Court, Westchester County, that "non-retroactivity principles cannot be invoked by parties within the very litigation leading up to a reversing decision". The Supreme Court, Westchester County, rejected this argument based on the holding of the Supreme Court of the United States in *Lemon v Kurtzman* (411 US 192). We disagree with the Supreme Court, Westchester County's reasoning.

In contrast to the facts in *Incorporated Vil. of Northport v Guardian Fed. Sav. & Loan Assn. (supra),* where the sponsor in good faith invested a large sum prior to the decision with respect to the village and another party, Bilotta purchased the subject property in conceded reliance upon the holding of this court in *Matter of Augenblick v Town of Cortlandt (supra),* and invested his money in construction of the plant at a time when he was concededly well aware that an appeal had been filed in the Court of Appeals. In short, rather than waiting for a resolution by the Court of Appeals, which he knew would be shortly forthcoming, Bilotta engaged in a reckless effort to complete the plant before the Court of Appeals decision and then attempted to hide behind the shield of "vested rights". This behavior cannot be condoned.

Nor does the decision in *Lemon v Kurtzman (supra),* relied on by the Supreme Court, Westchester County, mandate a different result. The decision of the Supreme Court of the United States in *Lemon v Kurtzman (supra),* which barred the retroactive application of a judicial determination, is inapposite to the facts at bar in view of the fact that (1) the Supreme Court of the United States specifically noted in that case that the constitutional issue presented therein was " 'an issue of first impression whose resolution was not clearly foreshadowed' " *(Lemon v Kurtzman, supra,* at p 206, quoting from *Chevron Oil Co. v Huson, supra,* at p 106) and (2) the party in *Lemon v Kurtzman (supra)* which was in a position similar to that of Bilotta in the case at bar was a State, i.e., the State of Pennsylvania. With respect to the latter point, the Supreme Court of the United States stated: "Appellants ask, in effect, that we hold those charged with executing state legislative directives to the peril of having their arrangements

unraveled if they act before there has been an authoritative judicial determination that the governing legislation is constitutional. Appellants would have state officials stay their hands until newly enacted state programs are 'ratified' by the federal courts, or risk draconian, restrospective decrees should the legislation fall. In our view, appellants' position could seriously undermine the initiative of state legislators and executive officials alike. Until judges say otherwise, state officers—the officers of Pennsylvania—have the power to carry forward the directives of the state legislature. Those officials may, in some circumstances, elect to defer acting until an authoritative judicial pronouncement has been secured; but particularly when there are no fixed and clear constitutional precedents, the choice is essentially one of political discretion and one this Court has never conceived as an incident of judicial review" *(Lemon v Kurtzman, supra,* at pp 207-208). For the purposes of our analysis, the contrast between the position of the State of Pennsylvania in *Lemon v Kurtzman (supra),* and that of Bilotta in the case at bar, could not be more striking.

Accordingly, the order and judgment appealed from must be reversed, the decision of the Court of Appeals in *Matter of Augenblick v Town of Cortlandt* (66 NY2d 775, *supra)* must be given retroactive effect, and the injunctive relief requested must be granted to the extent indicated.

BRACKEN, BROWN and EIBER, JJ., concur.

Ordered that the judgment and order is reversed, on the law, without costs or disbursements, the town defendants-respondents are enjoined from authorizing or permitting the construction or operation of an asphalt plant on Bilotta's property and Bilotta is enjoined from constructing or operating said plant, it is declared that the decision of the Court of Appeals in *Matter of Augenblick v Town of Cortlandt* (66 NY2d 775, *supra)* should be given retroactive application, and the complaint of Bilotta and Sandport Supply Corp. in matter No. 2 is otherwise dismissed.