John P. Donohoe, J.
Upon application of the parties, the court granted reargument of the respondents’ motion for an order dismissing the petition, following the decision dated November 2,1970.
Upon reargument, the respondents’ motion for an order dismissing the petition is granted.
In this proceeding under CPLR article 78, the petitioners attack :a decision of the Planning Board of the Town of Pound *844 Ridge, Westchester County. The decision was made by the respondents under the powers delegated to them by the Town Board under section 281 of the Town Law. There was presented simultaneously a proceeding under CPLR article 78 against the Town Board which petitioners attack for its participation in this matter. That proceeding is dealt with in a separate opinion.
The facts are not in dispute. The Town of Pound Ridge adopted a zoning ordinance which became effective on November 14, 1959. Under that ordinance, the 75-acre parcel of land about which this controversy revolves was placed in two residential districts with minimum two-acre and three-acre bulk requirements. This parcel belongs to the intervenors Prank and Yates, who have planned to develop it. It is known in this proceeding as the Bernier parcel, because Prank and Yates selected a man named Bernier, who is ,a custom builder, to do the work of development and construction.
The Town Board determined to apply the principles of cluster zoning to the Bernier parcel and found legislative authority for its determination in section 281 of the Town Law. That statute says: “§ 281. Approval of plats; conditions for changes in zoning provisions. The town board is hereby empowered by resolution to authorize the planning board, simultaneously with the approval of a plat or plats pursuant to this article, to modify applicable provisions of the zoning ordinance, subject to the conditions hereinafter set forth and such other reasonable conditions as the town board may in its discretion ;add thereto. Such authorization shall specify the lands outside the limits of any incorporated village to which this procedure may be applicable. The purposes of such authorization shall be to enable and encourage flexibility of design and development of land in such a manner as to promote the most appropriate use of land, to facilitate the adequate and economical provision of streets and utilities, and to preserve the natural and scenic qualities of open lands. The conditions hereinabove referred to are as follows:
‘ ‘ (a) If the owner makes written application for the use of this procedure, it may be followed at the discretion of the planning board if, in said board’s judgment, its application would benefit the town.
“ (b) This procedure shall be applicable only to lands zoned for residential purposes, and its application shall result in a permitted number of dwelling units which shall in no case exceed the number which could be permitted, in the planning board’s judgment, if the land were subdivided into lots conforming to the minimum lot size and density requirements of the zoning *845 ordinance applicable to the district or districts in which such land is situated and conforming to all other applicable requirements.
“(c) The dwelling units permitted may be, at the discretion of the planning board and subject to the conditions set forth by the town board, in detached, semi-detached, attached, or multistory structures.
“ (d) In the event that the application of this procedure results in a plat showing lands available for park, recreation, open space, or other municipal purposes directly related to the plat, then the planning board as a condition of plat approval may establish such conditions on the ownership, use, and maintenance of such lands as it deems necessary to assure the preservation of such lands for their intended purposes. The town board may require that such conditions shall be approved by the town board before the plat may be approved for filing.
“(e) The proposed site plan, including areas within which structures may be located, the height and spacing of buildings, open spaces and their landscaping, off-street open and enclosed parking spaces, and streets, driveways and all other physical features as shown on said plan or otherwise described, accompanied by a statement setting forth the nature of such modifications, changes, or supplementations of existing zoning provisions as are not shown on said site plan, shall be subject to review and public hearing by the planning board in the same manner as set forth in sections two hundred seventy-six and two hundred seventy-seven of this article for the approval of plats.
“(f) On the filing of the plat in the office of the county clerk or register, a copy shall be filed with the town clerk, who shall make appropriate notations and references thereto in the town zoning ordinance or map.”
On September 25,1969, the Town Board adopted the following resolution:
‘ ‘ WHEREAS, the Town of Pound Ridge Planning Board has requested the Town Board to exercise the provisions of Section 281 of the Town Law, and
“ WHEREAS, the Planning Board has requestesd that it be empowered by resolution to modify the applicable provisions of the Town of Pound Ridge Zoning Ordinance with respect to premises of Homer Bernier consisting of a 75-acre tract on the northerly side of Pound Ridge Road, shown on the Tax Map as Block 9816 Lot 35, and
‘1 WHEREAS, the aforesaid section 281 of the Town Law empowers this Board to authorize the Planning Board to modify *846 zoning standards simultaneously with, the approval of a plat to create ‘ open space subdivisions, ’ and
‘ ‘ WHEREAS, the request of the Planning Board is limited to the Bernier parcel and the Planning Board does not at this time seek authorization for discretionary use of Section 281 for other lands or proposed subdivisions within the town, and
“ WHEREAS, this Board has inspected the Bernier premises and the subdivision maps and renderings for conventional subdivision and open space subdivision of the Bernier parcel,
“NOW, THEREFORE, and pursuant to the provisions of Section 281 of the Town Law of the State of New York, it is
“RESOLVED that the Town Board hereby authorizes the Planning Board to consider and approve, subject to the conditions hereinafter set forth, the open space subdivision proposed for the Bernier parcel, and authorizes the Planning Board ‘ to modify the applicable provisions of the Town Zoning Ordinance ’, such ¡authorization to be limited and applicable solely to the aforesaid Bernier parcel, and be it further
“ RESOLVED that ‘ the purpose of such authorization shall be to enable and encourage flexibility of design and development of land in such a manner as to promote the most appropriate use of land, to facilitate the adequate and economical provisions for streets and utilities and to preserve the natural and scenic qualities of open lands ’ within the Bernier subdivision, and be it further
‘1 RESOLVED that the authorization hereby granted to the Planning Board shall be subject to the following conditions and limitations:
“1. This authority is limited to the Bernier Subdivision hereinabove described.
“ 2. The applicant shall in addition to submitting a proposed open space subdivision plan, submit a conventional subdivision plan conforming to all normally applicable requirements of the Zoning Ordinance. The planning board shall use such conventional plan to determine the maximum number of dwelling units to be permitted in the open space subdivision.
11 3. All dwelling units located in the proposed open space subdivision shall be single family, detached structures on individual building lots.
1 ‘ 4. All such individual building lots shall contain at least one-half of the normally required minimum lot area and shall meet the requirements of the County Health Department.
“ 5. The minimum floor area per dwelling and the maximum building height .shall be the same as specified for the district in which located.
*847 “ 6. Other dimensional requirements, including lot width and depth, front, side and rear yard setbacks, shall be as required for the next less restrictive district than that on which the lot is located, except that where such a lot abuts an existing residential lot which meets the normal lot area and dimensional standards for the zone, no reduction in front, side or rear yard setbacks shall be permitted.
“ 7. The application for approval of the proposed Bernier open space subdivision plan shall be accompanied by a statement specifically setting forth the nature of the requested modifications, changes, or supplementations of existing zoning provisions, and any additional information, particularly regarding the landscaping and improvements of open space areas as determined necessary by the Planning Board.”
On November 13, 1969, the Town Board adopted a further resolution which added the following condition: 1 ( All aspects of the proposed subdivision shall be subject to review and approval or disapproval of the Town Board, including, but not limited to the documents referred to in Paragraph 8, the location of the open space, building plots, streets, public trails, site easements and the location and dimensions of the ‘ improvement area ’ within the open space wherein recreational facilities may be maintained. The subdivision map and also the documents mentioned in paragraph 8 of this resolution shall specify that all recreational facilities, improvements or structures to be erected or maintained within the ‘ improvement area ’ shall be subject to obtaining a special permit from the Town Board upon the submission of a site plan showing the proposed improvement and such other data as may be required by the Town Board. ’ ’
On November 20, 1969, Yates and Frank applied to the Planning Board for approval of a subdivision plan which set out 23 plots of 1.5 acres each. The Planning Board approved this plan on December 18, 1969. The plan was then referred to the Town Board for final aproval. The Town Board met informally on February 12, 1970, revised the plan and sent it back to the Planning Board. That agency conducted a public hearing on the proposal, pursuant to notice on March 24, 1970, and voted its approval at that meeting. The approved plan was again submitted to the Town Board, which, in turn, approved it on April 9,1970.
The petitioners in this proceeding, and in its companion proceeding against the Town Board, object to the things that were done on fundamental grounds. The essence of their protest is that the zoning power has been abdicated by the Town *848 Board and placed in the hands of the Planning Board, out of the reach of the electorate. The itemization of their grievances, set forth in their prayer for relief, is extensive and detailed. In sum, they claim that the legislative power to zone has been delegated in violation of constitutional restraints.
This is a case which involves delegation and reservation of powers. The issue of delegation of power is whether, as a matter of law, the State Legislature and Town Board delegated power to make the law or simply conferred authority or discretion as to its execution, to be exercised under and pursuant to law.
Two limitations were placed upon the administrative discretion of the respondent Planning Board; they were the conditions imposed by the New York State Legislature in the statute and the conditions further imposed by the Town Board in its resolution invoking section 281. Both of these restraints must be considered in order to determine the extent of the discretion and authority which was granted to the Planning Board.
The first consideration is the grant of authority by the Legislature. The words of ¡section 281 amply demonstrate that the intent of the statute was to control the average density of zoned districts. Thus the statute grants authority to ‘ ‘ modify applicable provisions of the zoning ordinance ”. The stated purposes are to “ enable and encourage flexibility of design and development of land in such a manner as to provide the most appropriate use of land, to facilitate the adequate and economical provision of streets and utilities, and to preserve the natural and scenic qualities of open lands.” Finally, the grant of authority under subdivision (b) extends only to permitting a ‘ ‘ number of dwelling units which shall in no case exceed the number which could be permitted, in the planning board’s judgment, if the land were subdivided into lots conforming to the minimum lot size and density requirements of the zoning ordinance applicable to the district or districts in which such land is situated and conforming to all other applicable requirements.”
It would be difficult to express more clearly a statement of policy of controlling average density, within the framework of the zoning ordinance. The objective to be achieved is average density control. Only the details and particulars were left to be determined by the administrative agency, within the guidelines firmly established by the statute.
It has not been urged in this proceeding that the Planning Board acted outside the authority so granted to it by the Legislature and, by resolution, by the Town Board.
*849 The petitioners seek to relate section 281 of the Town Law to section 261 and following, which grant the legislative authority to zone exclusively to Town Boards. Petitioners would thus apply the earlier sections as a limitation and restraint upon the exercise of power under the latter. This is error. Section 281 is a further expression of the policy and theory of zoning, manifesting an intent to control average density and to 11 facilitate the adequate and economical provision of streets and utilities, and to preserve the natural ¡and scenic qualities of open lands ’ ’. Section 281 is not, as petitioners urge, inconsistent with section 261 and following, but is the logical and consistent development of the policies set forth in the earlier sections. This section sets aside a specifically limited area of authority to planning boards, as the Legislature made clear by providing separately for judicial review in section 282.
Petitioners have argued that the issue of delegation of power which is raised in this proceeding was decided in 1961 in Matter of Hiscox v. Levine (31 Misc 2d 151). In that proceeding, which was taken under section 282 of the Town Law to review the action of a town planning board in changing the bulk requirements of zoned land pursuant to authority granted to it by the Town Board under section 281 of the Town Law, the court (p. 154) held that the changes were unconstitutional upon the ground that the change constituted ‘ ‘‘ legislation which can never be accomplished by an administrative body ’ ”.
The Hiscox case is distinguishable from the case presented here, because sweeping amendments of section 281 of the Town Law have been enacted since that case was decided. In the first place, the law in effect in 1961 (L. 1939, ch. 590) said, in its opening paragraph, “ The town board is hereby authorized by general or special rule applicable to the zoning regulations of that part of the town outside the limits of any incorporated village or any portion of such zoning regulations to empower the planning board, simultaneously with the approval of any such plat either to confirm the zoning regulations of the land so platted as shown on the official zoning maps of the town, or to make cmy reasonable change therein, and such board is hereby empowered to make such change ” (italics supplied). The act further provided that in the event of such change, ‘ ‘ there shall not be a greater average density of population or cover of the land with buildings than is permitted in the district wherein such land lies, as shown on the official zoning map.”
In 1963, section 281 was amended by chapter 963 of the laws of that year. The amended act substituted the following *850 language in its opening paragraph: “ The town board is hereby empowered by resolution to authorize the planning board, simultaneously with the approval of a plat or plats pursuant to this article, to modify applicable provisions of the zoning ordinance, subject to the conditions hereinafter set forth and such other reasonable conditions as the town board may in its discretion add thereto. ’ ’
Subdivision (b) contains a new provision, which says, “ (b) This procedure shall be applicable only to lands zoned for residential purposes, and its application shall result in a permitted number of dwelling units which shall in no case exceed the number which could be permitted, in the planning board’s judgment, if the land were subdivided into lots conforming to the minimum lot size and density requirements of the zoning ordinance applicable to the district or districts in which such land is situated and conforming to all other applicable requirements.”
In 1969 subdivision (b) was further amended to state, “ (b) The application of this procedure shall result in a permitted number of building plots or dwelling units which shall in no case exceed the number which could be permitted, in the planning board’s judgment, if the land were .subdivided into lots conforming to the minimum lot size and density requirements of the zoning ordinance applicable to the district or districts in which such land is situated and conforming to all other applicable requirements.”
In that year also, subdivision (g) was added. It says, “ (g) The provisions of this section shall not be deemed to authorize a change in the permissible use of such lands as provided in the zoning ordinance applicable to such lands.”
Thus, it is seen that the law which was in effect in 1970, at the time of the proceedings which the petitioners complain of, contained conditions, guidelines and limitations upon the exercise of administrative power which the law that was applied in the Hiscox case did not contain.
An integral part of the decision in the Hiscox case was that the change wrought by the planning board was not reasonable. That was a judgment of the factual .situation which depended upon the circumstances of the case. The court (p. 156) found that the factual conclusions which were drawn by the planning-board were “ wholly unsupported by substantiating facts ”.
Upon the .reargument of this issue, counsel for the petitioners stated that there were no issues of the sufficiency of the evidence which would require referral of the proceeding to the Appellate Division.
*851 A principal ground of the motion for an order dismissing the petition is that the determination of the Planning Board was not final. That argument has been rejected in this court’s conclusion, which was stated in a separate opinion, that the Town Board was not authorized to reserve to itself the power to review the act of the Planning Board. The action of the Planning Board was not advisory, nor could it be under section 281. It was conclusive.
If the petition is read to ascertain what facts it alleges, as distinguished from the principles of law and conclusions which it asserts, it appears that its thrust is against the alleged 1 ‘ rezoning ’ ’ by the Planning Board. Petitioners complain that this is a violation of the law and runs counter to a current study of a town-wide “ Master Plan ”.
The first of these points, that the Planning Board has effectively, and illegally, rezoned has been rejected, as the court pointed out above. The second, dealing with contradiction of the nascent master plan, is irrelevant. The power of the Town Board to grant limited powers to the Planning Board under section 281 exists independently, by grant of authority by the Legislature and would continue to exist no matter what master plan were adopted. No Town Board has the power to repeal it.
The petition does not state facts sufficient to constitute a cause of action.