Leon D. Lazer, J.
This article 78 proceeding against the Planning Board of the Town of Islip places in issue the meaning of section 281 of the Town Law for the petitioners have challenged the approval under that statute of a cluster-type subdivision plat. The contested determination modified applicable zoning regulations by approving a map containing 43 lots ranging from 11,500 to 26,000 square feet in area in a Residence AA District which requires a minimum of 20,000 square feet per lot.
Section 281 of the Town Law provides in part: “ The town board is hereby empowered by resolution to authorize the planning board, simultaneously with the approval of a plat or plats pursuant to this article, to modify applicable provisions of the zoning ordinance, subject to the conditions hereinafter set forth and such other reasonable conditions as the town board may in its discretion add thereto. Such authorisation shall specify the lands outside the limits of any incorporated village to which this procedure may be applicable.” (Emphasis supplied.)
In purported pursuance of this statute the Islip Town Board adopted a resolution on November 21, 1972 which reads as *83 follows: “ The Town Board of the Town of Islip hereby delegates to the Planning Board, in accordance with the provisions of Section 281 of the Town Law, the power to modify applicable provisions of the zoning ordinance to the extent necessary to permit the development of a plat or plats approved by said Planning Board with detached, semi-detached or attached structures, commonly known as “ Cluster Zoning ” or “ Cluster Development. ’ ’
The .petitioning neighboring property owners assert that the Town Board’s resolution constitutes an invalid delegation of legislative power because it falls short of compliance with the statute by failing to “ specify the lands ” to which it is applicable. The respondents construe the resolution as a proper authorization to modify the zoning ordinance applicable to any residentially zoned property for which a subdivision plat is submitted. The history of the statute is crucial to its construction. The construction will determine the validity of the authorization and the disputed plat will survive or fall with that determination.
Until 1963, section 281 of the Town Law, as originally enacted in 1927 (L. 1927, ch. 175) as section 149-r and re-enacted under its present number in 1932 (L. 1932, ch. 634) provided that: “ The town board is hereby authorized, by general or special rule applicable to the zoning regulations of that part of the town outside the limits of any incorporated village or any such zoning regulations, to empower the planning board simultaneously with the approval of any such plat either to confirm the zoning regulations of the land so platted, as shown on the official zoning maps of the town, or to make any reasonable change therein ”.
The section remained largely free of judicial interpretation until Matter of Hiscox v. Levine (31 Misc 2d 151), an opinion which became a landmark because of the statutory results it wrought. In Hiscox, the Smithtown Planning Board, operating under a general authorization of the type here under attack, granted a zoning modification which affected 62.5 out of the 100 acres platted. The modified acres lay in a one-acre district and the modification resulted in the 33.1 acres which remained after parkland dedication being subdivided into half-acre lots. The court held that the modification was not a ‘1 reasonable change ’ ’ under the statute and that it infringed town board legislative authority. It concluded that the Planning Board lacked power to permit the 33.1 acres to be developed with more homes than the one-acre zoning restrictions would allow.
*84 The decision was followed shortly by successive revision of section 281 of the Town Law (see L. 1963, ch. 963) and the essentially identical provision contained in section 179:p of the Village Law (see L. 1965, ch. 104). The sponsor of the Village Law amendment commented that the earlier version had received “ confused judicial interpretation ” and that the amendments were designed to clarify the rights conferred on the planning board (Legislative Memorandum, Senator Bernard Gordon, 1965 N. Y. Legis. Ann., p. 238). It is scarcely disputable that the Town and Village Law were revamped in order to overcome the type of judicial disapproval of cluster zoning augured by Hiscox (see Orrell v. Planning Bd. of Town of Pound Ridge, 66 Misc 2d 843).
The 1963 amendment to section 281 of the Town Law amounted to a complete rewriting of the act. The power to make “ reasonable change ” in the zoning regulations was deleted and replaced by the power to “ modify ” such regulations. The planning board was empowered to approve detached, semi-attached, attached or multi-story structures and the density limitation on population was altered so as to refer only to dwelling units instead of to buildings and population. Nevertheless, in an apparent attempt to counter the Hiscox criticism of unlimited delegation of legislative power, the amendment restricted the planning board’s power of zoning modification to residentially zoned land, provided for further limitation of that power by reasonable conditions which the town board might impose in its resolution of authorization and finally qualified that authorization by requiring that it “ specify ” to the planning board “ the lands ” to which it was applicable. This ultimate limitation requires detailed examination.
The mandatory “ shall ” (Spears v. Mayor etc. of City of New York, 72 N. Y. 442; Rosenblum v. Gorman, 21 App. Div. 618; Matter of Boulevard Theatre & Realty Co., 195 App. Div. 518, affd. 231 N. Y. 615) precedes the word “ specify ” which to the lexicographers means “ to mention or name specifically or definitely ” (The Random House Dictionary of the English Language) or “to state precisely or in detail ” (Webster’s Third New International Dictionary) or “to particularize, or to distinguish by words one thing from another ” (Black’s Law Dictionary, 4th ed.). To judicial definers “ specify ” connotes “ to mention specifically; state in full and explicit terms * * * name expressly or particularly * * * to state precisely or in detail ” (Red Tap Brewing Co. v. Mazzotti, 107 F. Supp. 921, 923 [S. D. N. Y. ]; see, also, Dillow & Co. v. City of *85 Monticello, 145 Iowa 424, 431; Borough of Bogota v. Brewster Equip. Co., 83 N. J. Super. 586; Gray v. Aiken, 205 Ga. 649; Aleksich v. Industrial Acc. Fund, 116 Mont. 127, 138). To “ specify ” is to “ point out, to particularize or to designate by words one thing from another ” (Brazil v. Dupree, 197 Ore. 581; see, also, Morris & Eckels Co. v. Fulton Nat. Bank, 208 Ga. 222, 223; Independent Highway Dist. No. 2 of Ada County v. Ada County, 24 Idaho 416, 425; Colfax Grain Co. v. Bradford, 225 Ill. App. 419, 421). “ Specified ” means specifically named (Page v. Ordway, 40 N. H. 253, 256). The word “ specific ” is the very opposite of 11 general ” (State ex rel. State Ry. Comm. v. Ramsey, 151 Neb. 333; Smith v. McCoole, 5 Kan. App. 713; Matter of McNichol, 282 Pa. 187).
In construing a statute the intention of the Legislature is first to be sought from a literal reading of the act itself (Wiley v. Solvay Process Co., 215 N. Y. 584) according to its natural and obvious sense without resorting to an artificial or forced construction (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 94). A statute must also be read literally if it effects a delegation of legislative power (Peace v. McAdoo, 110 App. Div. 13) for it carries only powers clearly stated therein (Matter of Ocean Beach Ferry Corp. v. Incorporated Vil. of Ocean Beach, 298 N. Y. 30). Such a delegation can never be made by implication (Town of Mamaroneck v. New York Interurban Water Co., 126 Misc. 382; People v. Elkin, 196 Misc. 188) and a town cannot delegate its power beyond the measure granted by the Legislature (Nemeroff Realty Corp. v. Kerr, 38 A D 2d 437, affd. 32 N Y 2d 873). The instant Town Board resolution of authorization specifies no land and the delegation proceeds wholly by a broad implication which encompasses all land in the town. Had the Legislature intended to permit such a sweeping general grant by implication the pre-1963 language of section 281 of the Town Law referring to a “ general or special rule applicable to the zoning regulations ” would have sufficed. That language, however, was wholly excised by the 1963 amendment, A change in the wording of a statute generally indicates a change in meaning (Matter of Blatnicky v. Ciancimino, 206 Misc. 916, affd. 1 A D 2d 383, affd. 2 N Y 2d 943) and such an amendment following a judicial interpretation forcefully indicates that the judicial decision did not correspond with legislative intent and a different interpretation should be had (People ex rel. Makin v. Wilkins, 22 A D 2d 497). The legislative intent of the original version of section 281 of the Town Law contemplated the grant to the planning board of *86 broad and flexible powers in considering cluster subdivision plats. When Hiscox struck down such a grant as an invalid delegation of legislative power, the legislative response in 1963 was to authorize substantial modification of residential zoning regulations (e.g., “ multi-story structures ”) but simultaneously to compel the town board to particularize, name expressly or mention specifically the land which might be subject to such change in regulations. When the Legislature prescribes a new rule it may be inferred that it intended that the act should be done in no other way and that the statute is mandatory (Hardmann v. Bowen, 39 N. Y. 196; Matter of City of Rochester v. Bloss, 77 App. Div. 28, affd. 173 N. Y. 646). The deletion of the pre-Hiscox language contained in section 281 of the Town Law and its replacement by the requirement “ to specify the lands” leads to an inescapable conclusion — the “ general rule ” adopted by the Islip Town Board did not comply with section 281 of the Town Law and any zoning modification based upon it is void.
The court’s conclusion should not be read to require each planning board modification of zoning regulations to be preceded by a specific authorization relating to it, a result reached in Daly v. Wendell (N. Y. L. J., April 4, 1972, p. 20, col. 7). Although such a procedure was adopted by the Town Board in Orrell v. Planning Bd. of Town of Pound Ridge (66 Misc 2d 843, supra) (where it was also held that a town board has no subsequent power of review of plat approval under section 281 of the Town Law) it is not to be deemed exclusive. Subdivisions (b) and (c) of section 281 of the Town Law use the phrases “ plat or plats ” and “ district or districts ” thus indicating the authorization may extend to more than .a single plat or zoning district provided that the land is specified in the resolution. Nothing contained in the statute prohibits specification of all the residentially zoned lands in a town, but a general rule without mention of land will not suffice. The rule in Wendell would require separate town board authorization rfor every modified plat whether the change is insignificant (e.g., yard or frontage modification) or whether substantial variation of the regulations is sought. Such a result scarcely could have been intended by the Legislature.
The respondents assert inter alia that the determination to which the petition is addressed was not final as required by article 78 of the CPLR and that it has since been superseded by approval of a new map which has been further altered. CPLR 7801 provides that the article cannot be used to challenge a *87 determination which is not final except where otherwise provided by law. Section 282 of the Town Law contains such an exception. It provides for review pursuant to article 78 of “ any decision of the planning board concerning such plat or the changing of the zoning regulations of such land ” (see Matter of Elle v. Neenan, 68 Misc 2d 725; Matter of Peckham Inds., 60 Misc 2d 566, affd. on other grounds 34 A D 2d 826; Matter of Walton v. Town of Brookhaven, 41 Misc 2d 798). The instant review is thus within the statute.
The petition is granted.