LOUISVILLE AND JEFFERSON COUNTY PLANNING COMMISSION and D.R. Horton, Inc.—Louisville DBA Mareli Development Company Appellants

v.

Robert L. SCHMIDT, William D. Tatum, Edwin Parrott and William G. Husted Appellees

No. 1999–SC–0542–TG.

Supreme Court of Kentucky.

April 26, 2001.

As Modified on Denial of Rehearing Sept. 26, 2002.

Deborah A. Bilitski, Assistant Jefferson County Attorney, John G. Carroll, Ackerson, Mosley & Yann, P.S.C., William B. Bardenwerper, Bardenwerper & Lobb, Louisville, Counsel for Appellants.

Bill V. Seiller, Seiller & Handmaker, LLP, Michael C. Bratcher, Seiller & Handmaker, LLP, Louisville, Counsel for Appellees.

STUMBO, Justice.

The issue in this case involves the use of the Innovative Residential Development Regulations of Jefferson County (IRDRJC). In a well-articulated opinion authored by Judge John W. Potter, the Jefferson Circuit Court declared the practice unconstitutional. Appellant, Louisville and Jefferson County Planning Commission, filed an appeal with the Court of Appeals. Upon a motion supported by both parties, we granted transfer because of the great and immediate public importance brought about by the wide use of the IRDRJC and the likelihood that the instant controversy will arise time and again. After reviewing the arguments, we agree with the decision of the Jefferson Circuit Court and, accordingly, affirm its decision.

### BACKGROUND

All residential subdivision plans in Jefferson County are subject to both the zoning and subdivision regulations set forth in the Development Code for Jefferson County. The subdivision regulations provide certain specifications for the subdivision of property, such as the right of way widths for streets, sanitary sewage facility requirements, lot shapes, access to roadways and utility easements. The zoning regulations establish other requirements such as the minimum lot size, the size of the required front, side and rear yards, the heights of the buildings, and, by specifying the maximum number of dwelling units allowed per acre, the density of the development.

Rather than "re-invent the wheel," we shall quote extensively from Judge Potter's opinion the background of the necessary regulations, with corrections as needed.

The Legislature has granted Jefferson County Fiscal Court the power to enact zoning regulations, KRS 100.201 et seq.. However, this legislative grant of power comes with certain limits and restrictions, both as to what may be done and as to how it may be done.

Before the Fiscal Court may enact any land use regulations it must prepare a comprehensive plan to serve as a guide for the zoning regulations. KRS 100.201. The plan must be detailed and be developed in a specified manner. KRS 100.187; 191. It must be developed through public hearings, must be based upon research and analysis, and must contain a statement of goals and objectives. In addition, the plan must contain a land use plan showing the most appropriate and feasible patterns

for the general location, character and extent of the manner in which the County should use its public and private land. KRS 100.187.

Only after development of such a comprehensive plan may Fiscal Court take action, and again only in a certain manner. The Zoning Regulation must specify zones and the conditions must be uniform throughout a zone. As to each zone the regulations may specify the activity that may be carried on in the zone, the size, width, height, bulk, and location of structures in the zone, and the population density of the zone. KRS 100.203.

Once these zones are established development must proceed in accordance with the regulations unless the requirements are modified. And even here the legislature has hemmed in Fiscal Court's ability to permit departures from the zoning regulations. The enabling legislation recognizes two ways in which the conditions may be modified.

One way to avoid an existing regulations [sic] is to rezone the property. If a landowner wishes to rezone a property, the statutes specify in detail the procedure that must be followed. Among other things, there must be public hearings, recommendations by the Planning Commission, and final action by Fiscal Court. Even if this procedure is followed, the zoning change is only permissible if certain criteria are met. KRS 100.213. The rezoning must either be in agreement with the original comprehensive plan, or there must have been an unanticipated major change in circumstances since the adoption of the plan. In short, rezoning involves a major undertaking.

Another method to excuse non-compliance with the zoning regulations is to obtain a variance from the Board of Adjustment. KRS 100.111(24); KRS 100.241. Before a variance is granted the empowering legislation requires a public hearing, but more importantly the legislation ... severely limits the conditions under which a variance may be granted. Among other things, a variance can be granted only upon a finding that it will not alter the essential character of the general vicinity nor unreasonably circumvent the requirements of the zoning regulations. KRS 100.243. Also, one cannot obtain a variance for the use if the property is not permitted by the zoning regulation or alters the density requirements. KRS 100.247.

These regulations based upon the Comprehensive Plan specify additional details and requirements for each subdivision that are consistent with the zoning regulations. KRS 100.273, 281.

To summarize, in Jefferson County a property owner who wishes to use his [or her] property in a manner not permitted by the existing zoning laws has several options. For a major change he [or she] may request a zoning change, which must meet the strict requirements before the Planning Commission, and ultimately receive the approval of the Fiscal Court. [KRS 100.213.] For a more minor change he [or she] may request a variance. [KRS 100.111(24) ]. Again the developer must meet very strict requirements, but a Board of Adjustment can grant the variance. [KRS 100.241.]

FACTS

D.R. Horton, Inc.—Louisville d/b/a Mareli Development Company (Mareli),[1] a

---

1. The initial application was filed by Capstone Development, Inc, the original developer of

this subdivision. However, while this appeal was pending, the subdivision was sold to

developer, filed an application with the Commission on May 22, 1997, seeking to develop the Bridlewood Subdivision. The proposed site, approximately 68 acres, was zoned R-4, which requires a maximum density of 4.84 dwelling units per acre, a lot size of 9,000 square feet, a minimum lot width of 60 feet, and a maximum permitted floor area ratio of 0.5. However, the proposed Bridlewood Subdivision met none of these requirements and instead, the lot sizes were approximately 5,000 square feet, the minimum lot width was 50 feet and the maximum floor area ratio increased from 0.5 to 0.6.

Instead of seeking to rezone the property or requesting a variance, the developer sought approval under a zoning provision which authorizes "Innovative Residential Developments." These provisions were initially adopted by the Jefferson County Fiscal Court in 1982 and were designed to "encourage flexibility of design by allowing zero lot line, row house, cluster housing and other innovative designs which meet the intent of the guidelines of the Comprehensive Plan." Development Code § 9.5A. Essentially, an innovative subdivision permits smaller building lots than those required by the zoning regulations. As a trade off for reducing the size of the private lot space, innovative subdivisions must have an area of open common space, generally equal to the amount of the reduction in lot sizes, which can be used by all residents. In addition, innovative subdivisions allow areas unsuitable for building, such as those with a creek or steep slope, to be included in the overall density equation, but must, at a minimum, maintain an overall density within the limits of the underlying zoning district for that area.

To accomplish the purpose of the innovative regulations, the Planning Commission is empowered to grant "waivers" of the zoning regulations pertaining to minimum lot size, minimum lot width, yard requirements, distance between buildings and floor area ratio. However, at all times the overall density must remain within the guidelines established by the zoning regulations.

The Planning Commission may grant these waivers under the IRDRJC if the plan also meets one of the following criteria:

(1) The site has certain topographical and landform limitations or environmental constraints and the development respects these limitations and constraints; or

(2) The site meets infill objectives consistent with recommendations of an officially adopted neighborhood plan, corridor plan or urban renewal plan; or

(3) The proposal is a planned residential development that accommodates alternative housing styles, and/or living environments.

Development Code § 9.5A. The roughly 68 acres of Bridlewood subdivision contain streams and hillsides, rendering approximately 14 acres unsuitable for development. Under the plan, the developer, while seeking to leave the undevelopable portion vacant, proposed 266 building lots. Since the property met the first requirement, the innovative subdivision plan was approved. However, without approval as an innovative subdivision, only 250 building lots would be permitted. It is quite apparent that the developer was motivated by financial concerns. Classifying the subdivision as innovative would increase the

Mareli. By agreed order, the original owners of the property and Capstone were dismissed as parties and Mareli was substituted as a party defendant.

number of building lots, thereby increasing the developer's profits.

On October 30, 1997, the Planning Commission approved the subdivision as "innovative" and recorded the finding in their minutes. They found "the resulting lots and homes [would] not significantly differ in size, mass, and scale to the adjacent subdivisions" and therefore, the subdivision would "promote the public health, safety and welfare by providing alternative housing [and] ... protecting valuable open spaces."

Robert L. Schmidt, Appellee here and neighbor to the proposed innovative development, appealed the Planning Commission's ruling to the Jefferson Circuit Court. On appeal, Schmidt attacked the IRDRJC on two grounds. First, he argued the innovative subdivision provisions of the zoning ordinance permit the grant of "variances" disguised as "waivers" in violation of the legislative restrictions on the granting of variances. Second, he argued the regulations unconstitutionally delegate a legislative function, to wit: the determination of the regulation of specific zoning and conditions within a zone, to the Planning Commission.

In argument before the circuit court, the Planning Commission admitted that economic considerations have driven developers to propose "innovative" subdivisions and that under the regulations a developer could seek an innovative subdivision plan at any time and on any property by characterizing the proposal as a planned development that accommodated alternative housing styles and/or living arrangements. The circuit court concluded that the IRDRJC violates the legislative restrictions on granting variances. In reversing the decision of the Planning Commission, the circuit court declared the IRDRJC unconstitutional on grounds of both vagueness and improper delegation of a legislative function to the Planning Commission.

The Commission appealed the circuit court's decision to the Court of Appeals. We granted transfer to this Court and now affirm the lower court's decision.

## DISCUSSION

Judge Potter's opinion explains in detail the statutes necessary to understanding this argument. Therefore, we once again quote directly from his opinion.

All parties agree that Jefferson County may exercise only those powers given to it by the legislature. Further, if the legislature circumscribes that power the County must observe these limits.

KRS 100.111(24) defines a variance "a departure from dimensional terms of the zoning regulations pertaining to the height, width or location of structures, and the size of yards and open spaces ...."

KRS 100.241 grants the Board of Adjustment the power to hear and grant variances but the next section limits that power. Specifically, it states:

**100.243 Findings necessary for granting variances.**

(1) Before any variance is granted, the board must find that the granting of the variance will not adversely affect the public health, safety or welfare, will not alter the essential character of the general vicinity, will not cause a hazard or a nuisance to the public, and will not allow an unreasonable circumvention of the requirements of the zoning regulations. In making these findings, the board shall consider whether:

(a) The requested variance arises from special circumstances which do not generally apply to land in

the general vicinity, or in the same zone;

(b) The strict application of the provisions of the regulation would deprive the applicant of the reasonable use of the land or would create an unnecessary hardship on the applicant; and

(c) The circumstances are the result of actions of the applicant taken subsequent to the adoption of the zoning regulation from which relief is sought.

(2) The board shall deny any request for a variance arising from circumstances that are the result of the willful violations of the zoning regulation by the applicant subsequent to the adoption of the zoning regulation from which relief is sought.

Here, the Board violated this statute.

The Planning Commission has granted variances without making the findings required by the statute. The Board has sought to circumvent the statutes' [sic] requirements by granting "waivers" instead of variances.

Under the enabling legislation a variance is defined as:

a departure from the dimensional terms of the zoning regulation pertaining to the height, width, or location of structures, and the size of yards and open spaces where such departure meets the requirements of [Zoning Regulation] (brackets in original).

The circuit court found, and we agree, that the action by the Board herein is the equivalent of granting a variance under the guise of a "waiver." Thus, the zoning regulations that permit the establishment of an innovative subdivision without meeting the strict requirements of KRS 100.243 for a variance are unlawful.

The legislative limits on the grant of variances are *not* mere technicalities. The system delineated sets forth specific factors that the Board must consider and findings that must be made. In doing so, the legislature recognized the very real tensions that necessarily exist between the interests of the landowner and society as a whole. Additionally, as noted by the circuit court, the interests of the focused and financially motivated landowners are pitted against that of the general public, whose interests frequently, if represented at all, are voiced by uncompensated adjoining landowners. This contrasts with the original establishment of the comprehensive plan and adoption of the zoning ordinances, which permit and encourage a more global view. Once the use of a particular tract of land is at issue, the owner's interests are clearly drawn and easily voiced in concrete terms. Public welfare is much more nebulous. Thus, the limitations imposed on the grant of variances protect the comprehensive plan from gradual erosion on a case by case basis.

In describing the effect of the IRDRJC and the authority it grants to the planning commission, the circuit court correctly noted:

As previously noted, the subdivision regulation for Innovative Residential Developments empowers the Planning Commission to waive a zoning district's requirements for lot size, lot width, yard requirements, distance between buildings and floor area ratios if the following conditions are present: 1) the specifics for the zoning district and subdivision regulations cannot be met; 2) the proposal meets the intent of the Innovative Regulation; and 3) the waivers do not harm the public health, safety and welfare. Under the provisions of the regulation, the Planning Commission's authority to grant sweeping changes in

terms of waivers amounts to nothing less than the authority to rezone. As such, the regulation is an unlawful delegation of a legislative power by the Fiscal Court to an administrative body.

■ The overall purpose of zoning is to promote the common good and general welfare of the community as a whole. *Fritts v. City of Ashland,* Ky., 348 S.W.2d 712, 714 (1961). While zoning is an inherently legislative power, *Adams v. City of Richmond,* Ky., 340 S.W.2d 204, 207 (1960), it may at times be legislative in nature and at other times adjudicatory in nature, depending upon the nature of the zoning change. *City of Louisville v. McDonald,* Ky., 470 S.W.2d 173, 179 (1971). In order to delegate a legislative function, "[t]he legislative scheme must be essentially complete on its face, leaving to regulatory authority administrative rather than policy decisions." *Diemer v. Com. Transp. Cabinet,* 786 S.W.2d 861, 865 (1990). Further, "[t]he 'delegation of discretion is not unlawful' only 'if sufficient standards controlling the exercise of that discretion are found in the act.'" *Id.* (quoting *Holsclaw v. Stephens,* Ky., 507 S.W.2d 462, 471 (1973).

■ In the case at bar, we find that the standards set by the regulation are not sufficient to control the discretion of the Planning Commission. Three conditions are set forth in the IRDRJC that purportedly limit the Planning Commission's discretion and ability to grant a waiver. First, the developer must prove that the specifics of the zoning district and subdivision regulations cannot be met. Second, the developer's proposal must meet the intent of the Innovative Regulation. And third, the waiver must not harm the public health, safety and welfare. All three conditions must be met in order to obtain a waiver. Development Code § 9.5C. However, we fail to see how these conditions in fact limit the Planning Commission's discretion in any way. A developer attempting to meet the first condition need only purposefully propose a subdivision that would not fit within the zoning district of that area. The second criterion does not present much of a limitation either since a developer can easily satisfy this requirement simply by submitting a proposal that meets the general requirements for an innovative subdivision. The condition we find to be the most troubling, however, is the third alleged limitation. This condition is vague and, in essence, grants almost unbridled discretion. "[M]ere broad generalizations with regard to health, safety, morals and general welfare," are not specific enough standards to justify a delegation of authority. *Snyder v. Owensboro,* Ky., 528 S.W.2d 663, 664 (1975). In sum, these regulations impermissibly allow the Planning Commission to exercise an authority which is more legislative in nature than ministerial.

Additionally, we are very troubled by the general effect of the IRDRJC. As previously described, setting up a zoning plan is a painstaking, complex process, requiring the development of goals and objectives, consideration of the realities of the property involved, and the collection of public input and concerns. Once a comprehensive plan is adopted, it can only be avoided through rezoning or variance, neither easy to obtain as both are strictly circumscribed. The IRDRJC permits a change on a large scale basis, as opposed to a single lot, as is usually found in a variance. Here the change sought affected the size and shape and density of more than 250 lots spread over 68 acres. The niceties of the variance requirements are disregarded and the comprehensive plan tossed aside. Zoning requirements become a set of suggestions, easily avoided.

Appellants also note that Section C of the IRDRJC provides as follows:

*When making this determination, the Planning Commission will base its decision on the guidelines of the Comprehensive Plan....*

This provision, it is argued, acts as a check on the discretion of the Planning Commission to grant a waiver. However, we note that the guidelines of the comprehensive plan lack the specificity needed to rein in the sort of waivers or, more accurately, variances at issue. The comprehensive plan speaks broadly as to the use of land, generally in terms of large areas and usage patterns. The specifics of building types, population density and usage are set forth in zones designed to accomplish the overall plan. It is the zoning regulations adopted by the fiscal court that the IRDRJC waivers set aside. "Waivers" as defined by the IRDRJC are simply "variances" of zoning regulations and must meet the requirements of KRS 100.243.

■ Appellant argues that innovative regulations are presumed to be valid, *Kentucky Airport Zoning Commission v. Kentucky Power Company,* Ky.App., 651 S.W.2d 121, 124 (1983), and, therefore, they should be held unconstitutional only if "there is no rational connection between that action and the purpose for which the body's power to act exists." *City of Louisville v. McDonald,* 470 S.W.2d 173, 178 (1971). In support of this argument, Appellants point out that the IRDRJC has been used since 1982, and since that time, more than 100 innovative subdivision plans have been approved pursuant to its requirements. However, length of use does not magically give an otherwise constitutionally weak regulation strength. Fur-

thermore, we have never held that the mere fact that a regulation has a rational basis is sufficient enough to make the regulation constitutional. Indeed, the regulations at issue here clearly fail to pass constitutional muster. They are vague and involve an unlawful delegation of power. As such, even though they have been used for years, they are nonetheless void.

■ In rendering this opinion, we are aware of the potential impact our decision today will have. Building and development in Jefferson County may be severely altered. While we are aware of the need for flexibility and innovation in certain circumstances, this need cannot serve as a basis to give the Planning Commission unlimited discretion and, in essence, the power to avoid the strict requirements under the zoning laws of the Commonwealth as set forth by the legislature. Zoning changes and variances are only permissible if the proper procedure set forth by the General Assembly is followed. In this case, the statutory procedure was not followed, and instead, the Planning Commission was attempting to override the power of the legislature. Local authorities have no right to usurp the General Assembly's power and attempts to do so may be declared void.[2]

Accordingly, we affirm the decision of the Jefferson Circuit Court and hold that the Innovative Residential Development Regulations of Jefferson County are unconstitutional and, therefore, void.

LAMBERT, C.J.; KELLER and WINTERSHEIMER, JJ., concur.
KELLER, J., concurs by separate opinion, with LAMBERT, C.J., joining that concurring opinion.

---

2. *See Hacker v. Baesler,* Ky., 812 S.W.2d 706 (1991) (holding that a mayor of an urban-county government lacked authority to veto a zoning ordinance because the right to vote conflicted with the legislative's right to enact zoning ordinances).

COOPER, J., dissents by separate opinion, with GRAVES and JOHNSTONE, JJ., joining that dissenting opinion.

KELLER, Justice, concurring.

I agree with the majority that Jefferson County's Innovative Residential Development Regulations (IRDR) unconstitutionally delegate to its Planning Commission the authority to grant "waivers" from its zoning requirements without sufficiently limiting that discretion. I write separately both to address the dissenters' contention that the IRDR constitute a "floating zone" and to express my opinion that, while the General Assembly has legislatively created a procedure which permits county governments to delegate to their planning commissions the authority to grant variances, the legislature did not grant those governments the authority to rewrite those procedures. In my opinion, Jefferson County's IRDR fail to pass constitutional muster because they attempt a "short-cut" around the procedures authorized by the General Assembly.

I believe Justice Cooper's dissenting opinion improperly characterizes the IRDR as a "floating zone" approved by the Jefferson County legislative body. Admittedly, the varied zoning techniques which governments have employed to permit cluster development are difficult to differentiate.[1] Although Justice Cooper correctly observes that the effect of the IRDR mimics the effect of "floating zones" approved by this Court in *Bellemeade Company v. Priddle*[2] and *Cetrulo v. City of Park Hills*,[3] not all governmental attempts to permit cluster zoning involve "floating zones," and similarity alone does not allow us to treat Jefferson County's IRDR as such a zone.[4] It is axiomatic that we must assess the constitutionality of Jefferson County's chosen cluster zoning procedure, the IRDR, by examining those regulations. The fact that another procedure might be constitutional is irrelevant to our inquiry.

A "floating zone," is, first and foremost, itself a zoning district and, standing alone, exhibits the characteristics of a zone—legislative preapproval of a specific "kind, location, size, and form of structures[.]"[5] "Floating zones" also alter the zone boundaries of the area developed by carving a new zone out of an existing one.[6] The IRDR do not specify zoning limitations

---

1. *See* F. Tinio, Annotation, *Zoning: Planned Unit, Cluster, or Greenbelt Zoning*, 43 A.L.R.3d 888, 1972 WL 31945 (2000):

   Accordingly, a *variety of zoning techniques* have been adopted which individualize the regulation of land use and permit greater flexibility of regulation than is practicable under orthodox zoning ordinances. Among these are the special permit, ... the exception device, ... the floating zone device, ... and regulations allowing the development of tracts of land in compliance with overall density limitations, but without regard to specific yard, lot coverage, area, or frontage requirement.
   *Id.* (emphasis added).

2. Ky., 503 S.W.2d 734 (1973).

3. Ky., 524 S.W.2d 628 (1975).

4. *See Bowie v. Board of County Commissioners of Howard County*, 253 Md. 602, 253 A.2d 727, 732 (1969) ("It is true that the ... district has one of the features of a floating zone. It was not in the original zoning ordinance and was not designated on the comprehensive zoning map. This fact, alone, however, would not make it a floating zone." *Id.*).

5. *See* K. Karnezis, Annotation, *Zoning: Regulations Creating and Placing "Floating Zones,"* 80 A.L.R.3d 95 (1977); *Hooper v. Mayor and City Council of Gaithersburg*, 270 Md. 628, 313 A.2d 491, 495–6 (1974); *Prince George's County v. M & B Construction Corp.*, 267 Md. 338, 297 A.2d 683, 694–5 (1972).

6. *See* Karnezis, *supra* note 5; *Summ v. Zoning Commission of Ridgefield*, 150 Conn. 79, 186 A.2d 160 (1962).

such as minimum lot sizes and widths, floor area ratios, etc., and the IRDR exclusively and repeatedly defer to the requirements of the zoning district in which the proposed IRDR development is to be located.[7] The IRDR, therefore, do not create a zone with its own characteristics, but rather purport to allow the Planning Commission to exempt the development from certain zoning requirements of the host district:

> In order to promote the purpose of this section, and to permit the greatest possible flexibility in the utilization of innovative residential concepts, the Planning Commission may specifically waive the requirements of any existing zoning district regulation pertaining to:
> — minimum lot size
> — minimum lot width
> — yard requirements
> — distance between buildings
> — floor area ratio [8]

While Jefferson County could have elected to permit residential cluster development through the creation of a "floating zone" which specified certain minimum standards (e.g., density, minimum lot size and width, yard requirements, distance between buildings, floor area ratio, etc.), it chose instead to pursue the same end through its zoning ordinances[9] by authorizing the Planning Commission to permit cluster developments through the IRDR's "waiver" procedure. Accordingly, I do not believe this Court's prior jurisprudence concerning "floating zones" is germane to the IRDR.

The General Assembly has authorized county governments to empower their

---

7. *See, e.g.,* Louisville/Jefferson County Development Code § 9.5(A):

Innovative residential proposals developed according to this section may not increase the density *in excess of the density permitted in the applicable zone. Innovative residential proposals requiring a density variation will be subject to a zoning amendment to another appropriate zoning classification.*

*Id.* (emphasis added); *Id.* at § 9.5(B)(1):

Maximum Density: There shall be no more than one dwelling unit on each lot. *The number of dwelling units for the entire development may not exceed the number which is theoretically possible according to the rules generally applicable to the zoning district.* This is determined by dividing the total acreage by the minimum lot area prescribed for the zoning district.

*Id.* (emphasis added).

8. *Id.* at § 9.5(C)(1).

9. *See* Karnezis, *supra* note 5:

Another means of injecting flexibility into zoning regulations is by a device sometimes called cluster zoning, by which provision is made in a zoning ordinance or in subdivision regulations for the development of tracts of land in compliance with the overall density limitations but without regard to specific yard, lot, coverage, area, or frontage requirements. One court explicitly distinguished cluster developments from floating zones in its holding that a resolution by a county legislative body authorizing cluster development in certain zones within the county was not invalid as contrary to the county charter which prohibited floating zones. The court emphasized that the resolution provided that cluster development was to be a permitted use in certain residential zones and was not the subject matter of any separate zone, as would be the case if a floating zone were involved.

*Id. See also* 83 Am.Jur.2d *Zoning and Planning* § 538; *Prince George's County v. M & B Construction Corporation, supra* note 5 at 693:

As we analyze the relevant legislation, the District Council exercised *its* zoning functions in amending the zoning ordinance to provide for cluster development as a permitted use by Resolution 244 and further provided for the *implementation* of the amendment by means of the subdivision functions already possessed by the Planning Commission and the Planning Board in accordance with adequate guides and standards set forth in the amendatory legislation.

*Id.; Rouse v. O'Connell,* 78 Misc.2d 82, 82–84, 353 N.Y.S.2d 124, 126–7 (N.Y.Sup.Ct.1974).

planning commissions to grant variances from zoning regulations when approving a subdivision plat:

> Subdivision regulations shall be based on the comprehensive plan, in those counties which have adopted a comprehensive plan, and all subdivision regulations shall contain:
>
> . . .
>
> (6) The text may empower the planning commission to hear and finally decide applications for variances when a proposed development requires a subdivision and one (1) or more variances.
>
> (7) In any regulation adopted pursuant to subsection (6) of this section:
>
> (a) The text shall provide that the planning commission shall assume all powers and duties otherwise exercised by the board of adjustment pursuant to KRS 100.231, 100.233, 100.237, 100.241, 100.243, 100.247, and 100.251 in a circumstance provided for by subsection (6) of this section; and
>
> (b) The text shall provide that the applicant for the subdivision at the time of the filing of the application for the subdivision may elect to have any variance for the same development to be heard and finally decided by the planning commission at the same public hearing set for the subdivision, or by the board of adjustment as otherwise provided for in this chapter.[10]

In fact, the Metropolitan Subdivision Regulations, adopted by the legislative bodies of both Louisville and Jefferson County, contain such an authorization:

> The Commission is hereby empowered to do all lawful things necessary and proper to the complete administration and enforcement of these regulations, including but not limited to the power to hear and finally decide applications for variances when a proposed development requires a subdivision and one (1) or more variances. In considering applications for variances under these regulations, the Planning Commission shall assume all powers and duties otherwise exercised by the Board of Zoning Adjustment pursuant to KRS 100.231, 100.233, 100.237, 100.241, 100.243, 100.244 and 100.251. The applicant for the subdivision, at the time of the filing of the application for the subdivision, may elect to have a variance for the same development to be heard finally decided by the Planning Commission at the same public hearing set for the subdivision, . . . . [11]

Unlike the IRDR "waiver" procedure, however, Section 1.40 of the Metropolitan Subdivision Regulations requires the Planning Commission to "assume all powers and duties otherwise exercised by the Board of Zoning Adjustment pursuant to . . . [KRS] 100.243 . . . ."[12] This includes the duty to make specific findings before granting any variance from zoning requirements.[13] The IRDR attempt to allow the Planning Commission to grant variances under a different label ("waivers") and less stringent criteria. The General Assembly and this Court agree that county and mu-

---

**10.** KRS 100.281

**11.** Louisville/Jefferson County Metropolitan Subdivision Regulations, § 1.40.

**12.** *Id.* Section 1.40.

**13.** *See* KRS 100.243(1) ("Before any variance is granted, the [Commission] must find that the granting of the variance will not adversely affect the public health, safety or welfare, will not alter the essential character of the general vicinity, will not cause a hazard or a nuisance to the public, and will not allow an unreasonable circumvention of the requirements of the zoning regulations." *Id.*).

nicipal governments may not achieve even desirable ends by impermissibly conflicting with and "watering down" procedures created by the General Assembly.[14] In my opinion, the IRDR unconstitutionally dilute KRS 100.281's delegation procedure, and I therefore join the majority and the trial court in declaring the IRDR void.

LAMBERT, C.J., joins.

COOPER, Justice, dissenting.

When the General Assembly enacted its comprehensive revision of Kentucky's planning and zoning statutes in 1966,[1] it included KRS 100.203(1)(e), which authorizes "[d]istricts of special interest to the proper development of the community, including, but not limited to, exclusive use districts, historical districts, planned business districts, planned industrial districts, renewal, rehabilitation, and conservation districts; *planned neighborhood and group housing districts.*" (Emphasis added.) Noting the growing dissatisfaction with the quality of design and site planning produced by traditional Euclidean zoning, Professor A. Dan Tarlock predicted that this provision of the new legislation, read together with KRS 100.203(1)(c) and (d), would support innovative planning methods that would either supersede traditional uniformity requirements or be held to satisfy those requirements because the statutes are uniform even though their application to the individual developer may vary. A.D. Tarlock, *Kentucky Planning and Land Use Control Enabling Legislation: An Analysis of the 1966 Revision of K.R.S. Chapter 100*, 56 Ky. L.J. 556, 599 (1967–68).

> The new enabling legislation appears to authorize planned unit development ordinances but leaves their content entirely up to the individual planning units.

*Id.* at 598.

As Professor Tarlock predicted, our predecessor Court held in two subsequent cases that KRS 100.203(1)(e) authorized two new and innovative zoning techniques with similar characteristics. At issue in *Bellemeade Company v. Priddle*, Ky., 503 S.W.2d 734 (1973), was a provision in a local ordinance that authorized the planning commission to establish a neighborhood development unit, "which, in 'zoning' parlance, is frequently referred to as a 'floating zone.'" *Id.* at 738.

> "The phrase 'floating zone' has been coined to designate a method of zoning whereby selected uses of property are authorized in districts devoted to other uses under terms and conditions laid down in the ordinances themselves." ... A floating zone is differentiated from a fixed ("Euclidean") zone in that the latter is a specifically defined area under the zoning ordinance, while the boundaries of the former are undefined and it "floats" over the entire district until by appropriate action the boundaries are fixed and it is anchored. Fur-

---

**14.** *See* KRS 67.083(6)(b); KRS 82.082(2); *Allen v. Hollingsworth*, 246 Ky. 812, 56 S.W.2d 530, 532 (1933):

> It is a general rule of construction ... that where a particular mode of exercising a power is granted by statute, other modes as by implication are deemed to have been excluded.... 'Powers not conferred are just as plainly prohibited as though expressly forbidden, and when powers are conferred to be exercised in a specified manner, three is an implied restriction upon the exercise of that power in excess of the grant, or in a manner different from that permitted. Every positive direction to a subordinate tribunal contains an implication against everything contrary to it, or which would tend to frustrate or disappoint the purpose of such direction.'

*Id.* (quoting *Bruner v. Jefferson County Fiscal Court*, 239 Ky., 613, 40 S.W.2d 271, 273 (1931)) (citations omitted).

**1.** 1966 Ky. Acts, ch. 172.

thermore, it is the landowner who instigates the procedure which results in the settling of the floating zone.

*Id.* (citations omitted). *See also* 83 Am. Jur.2d *Zoning and Planning* § 509, *et seq.;* K. Karnezis, Annotation, *Zoning: Regulations Creating and Placing "Floating Zones",* 80 A.L.R.3d 95 (1977).

In *Bellemeade,* the floating zone provision resulted in the construction of a motel within a neighborhood zoned residential. Citing Professor Tarlock's article, *supra,* the Court held that the language of KRS 100.203(1)(e) authorized the creation of floating zones and other innovative zoning methods. In *Bellemeade,* as here, the opponents of the planning commission's action claimed that the use of a floating zone was an unconstitutional delegation of legislative authority from the legislative body (City of Paducah) to the planning commission. The Court disagreed, holding that the city had not abdicated its legislative function, because the ordinance, itself, created the floating zone and established the guidelines by which the commission would determine its location. *Id.* at 739. In *Bellemeade,* as here, the opponents of the zoning action also claimed that the location of the floating zone was an unauthorized variance from the zoning map. Holding otherwise, the Court stated that "a floating zone is not a prohibited use nor is authorizing one the granting of a variance." *Id.* at 740. A variance is an unauthorized use within a particular zoned area. As here, the floating zone in *Bellemeade* was specifically authorized by both the enabling legislation, KRS 100.203(1)(e), and the local zoning ordinance.

In *Cetrulo v. City of Park Hills,* Ky., 524 S.W.2d 628 (1975), the Court upheld a planning commission's approval of a "planned unit development" (PUD) consisting of a seven-story condominium on a 7½ acre tract within a neighborhood zoned for single family residences. As here, the opponents of the PUD claimed that it amounted to a map amendment which required findings of fact supported by substantial evidence. The Court held that the PUD was not a map amendment, but a use specifically authorized by the terms of the zoning ordinance. *Id.* at 629. The Court found the PUD method of zoning to be identical to the floating zone approved in *Bellemeade, supra.*

It was in the context of this legislative and judicial background that the Jefferson County Fiscal Court adopted Section 9.5 of its comprehensive plan, the Innovative Residential Development Regulation (IRDR), in January 1982. As applied to this case, the IRDR permits a form of clustered residential development in areas which are topographically unsuited to the Euclidean-type zoning restrictions otherwise required by the comprehensive plan. The regulation recognizes the purpose of traditional dimensional restrictions as being to limit the number of residences permitted within a particular area; and allows the developer to take credit for those common open spaces *i.e.,* steep slopes, streams, etc., which are unsuitable for residential construction. The IRDR requires a comprehensive application by the developer and establishes standards that must be followed by the planning commission before this type of innovative land use can be approved. In other words, the IRDR is but another form of floating zone or PUD, an innovative zoning method approved in this Commonwealth for more than twenty-five years. It is not an abdication of the legislative function, because it was created by the same legislative body that enacted the zoning ordinance. In fact, it is a part of the zoning ordinance. For the same reason, it is erroneous to characterize the IRDR as an unauthorized variance.

Until today, we have never questioned the logic and wisdom of *Bellemeade Company v. Priddle, supra,* and *Cetrulo v. City of Park Hills, supra.* On their authority, over one hundred innovative residential development subdivisions have been approved in Jefferson County alone. The arguments accepted by the majority opinion today are the same arguments rejected by our predecessor Court in *Bellemeade* and *Cetrulo.* Without acknowledging even the existence of KRS 100.203(1)(e) or the landmark cases interpreting it, the majority of this Court has eviscerated the statute, overruled *Bellemeade* and *Cetrulo* by implication, and set land use planning in this Commonwealth back at least thirty-five years.

Accordingly, I dissent.

GRAVES and JOHNSTONE, JJ., join this dissenting opinion.